HANNAH A. BUZZELL *versus* LACONIA MANUFACTURING CO.

It is the duty of every employer to use all reasonable precautions for the safety of those in his employment, by providing them with suitable machinery, and keeping it in a condition not to endanger the safety of the employed; and, by the same reasoning, bridges, passageways or ladders necessary to be used in going to or returning from labor, should be kept safe and convenient by the employer.

The master is responsible to the servant for an injury caused by the negligence and want of ordinary care of the former, the defect occasioning the injury being known to the master, and not to the servant.

But, if the defect was known to the servant, or to both servant and master, and the servant continued in the service, he assumed the risk himself.

Neither can the servant recover, if his own neglect contributed to the injury. In order to maintain his suit, he must show ordinary care on his part.

In a suit for damages to an employee, arising from the neglect of the employer, in the use of defective machinery or tools, the declaration is bad, if it does not allege, that the defect was unknown to the plaintiff, as well as known to the defendant, and that it arose from the want of proper care and diligence on the part of the defendant.

ON DEMURRER.

This was an action of the case. The declaration alleged, in substance, that the defendants were the owners of a cotton mill in Biddeford, to which they had built and maintained a

bridge and walk for persons working in the mill to pass and repass over when going to and returning from said mill; that, on the twenty-fourth day of September, 1859, the plaintiff was, and for a long time had been, in the defendants' employment, and, in such employment, was required to pass over said bridge and walk; that the defendants then, and for a long time before, had represented that said bridge and walk were safe and sufficient; that the said bridge and walk were not safe and sufficient, but, on the contrary, unsafe, &c. ; and that, on said day, by reason of the negligence and carelessness of the defendants, and not by any fault of her own, the plaintiff was thrown down and permanently lamed and injured, &c., to the damage of the plaintiff in the sum of $10,000. A second count alleged that, by reason of the injury received by the plaintiff, she had suffered great pain and inconvenience, had expended large sums of money for surgical aid, nursing, &c.

The defendants filed a general demurrer, which having been joined, the presiding Judge, APPLETON, J., adjudged the declaration bad. The plaintiff excepted.

*R. P. Tapley,* for the plaintiff, argued that a corporation should be held responsible for its own carelessness, whereby one of its servants suffered damage. The reported cases do not hold corporations liable for negligence of their servants, whereby fellow servants suffer, but none go so far as to excuse the corporation for their own negligent acts. *Carle* v. *Bangor & P. R. R. Co.,* 43 Maine, 269; *Beaulieu* v. *Portland Co., (post.);  Tarrant* v. *Webb,* 86 C. L. R., 804; *Brown* v. *S. Ken. Ag. Soc.,* 47 Maine, 275.

The latter case determines the liability of a corporation to one not an employee. Why should it be less in the case of one in their service ?

It is alleged in the declaration, and by the demurrer admitted to be true, that the defendants made representations to the plaintiff that the walk was safe, convenient, &c., and that the plaintiff, trusting in those representations, passed over it and was injured, not *without the fault,* but utterly through the

fault of the defendants. Having induced the plaintiff to pass over the walk to her injury, by their representations and the requirements of their rules, shall they be exonerated from liability, when the injury was occasioned by the careless and insufficient construction of the walk by the corporation, and their negligence to keep it in repair whilst making the representations? Such a construction would bring reproach on the law.

*T. M. Hayes,* for the defendants, cited *Priestly* v. *Fowler,* 3 Mees. & Wels., 1; *Hutchinson* v. *York N. & B. R. Co.,* 5 Exch., 343; *Wigmore* v. *Jay,* 5 Exch., 354; *Southcote* v. *Stanley,* 1 Hurls. & Nor., 247; *Shipp* v. *Eastern Co. R. Co.,* 9 Exch., 223; *Wiggett* v. *Fox,* 11 Exch., 832; *Seymour* v. *Maddox,* 71 Eng. C. L., 326, (Phil. ed.); *Ormond* v. *Holland,* 96 Eng. C. L., 102; *Tarrant* v. *Webb,* 86 Eng. C. L., 797.

The opinion of the Court was drawn up by

APPLETON, J. — The plaintiff and the defendants sustain to each other the relation of master and servant. The plaintiff, in her writ, alleges that the defendants are owners of a mill and bridge erected by them and connected therewith, over which she was obliged daily to pass and re-pass in going to and returning from her labor in their service; that through their negligence it had become out of repair, unsafe and dangerous; that the defendants represented it to be safe and free from danger; that, relying on their representations, she passed over the bridge, and, in so passing, was dangerously injured and suffered great bodily pain, without fault on her part, and in consequence of the defective and dangerous condition of the bridge, arising from the defendants' neglect and want of ordinary care.

The defendants, by their demurrer, admit the facts set forth in the plaintiff's writ.

The defendants would, unquestionably, be liable to a stranger for an injury caused by the defect or want of repair of a bridge which they were bound to keep in repair, and over

which he was obliged to pass and was passing to the defendants' counting room, for the purpose of transacting business with them, if the injury occurred without default on his part, and in consequence of the ruinous condition of the bridge, arising from their negligence and want of ordinary care.

It is difficult to perceive why a similar rule should not apply in case of a servant injured in passing over a bridge unsafe from the negligence of his employer, when he is passing over the same in the course of his employment, and the neglect of the employer, without fault on his part, is the cause of the injury.

It is the duty of every employer to use all reasonable precautions for the safety of those in his service. He should provide them with suitable machinery, and see that it is kept in a condition which shall not endanger the safety of the employed. If the employer knowingly make use of defective and unsafe machinery, when an injury is done to a servant ignorant of its condition, and in the exercise of ordinary care, he should compensate the person thus injured through his neglect. The capital of the master furnishes the means of his employment. His will determines the place. His sagacity directs, controls and supervises not merely the labor, but the machinery and other instruments and appliances by which the labor is performed. The superior intelligence and determining will of the master demand vigilance on his part, that his servants shall neither wantonly nor negligently be exposed to needless and unnecessary peril. The servant has no general control. He is the actor. The master is the director. The one commands, the other obeys. The servant is in subordination. He relies on the judgment of the master that suitable machinery and the needed requirements are supplied. He has not the means nor the opportunity of knowing whether those furnished may be safe, and he may be wanting in the intelligence required for the proper determination of the question. His service is compulsory, from the pressure of want. His attention is exclusively due to the peculiar duties incident to his branch of

employment. He assumes the risks, more or less hazardous, of the service in which he is engaged, but he has a right to presume that all proper attention shall be given to his safety, and that he shall not be carelessly and needlessly exposed to risks not necessarily resulting from his occupation and preventable by ordinary care and precaution on the part of his employer.

The servant is responsible for his own neglects. The general supervisory responsibility and control over all the work to be done, the place where, the instruments with which and the persons by whom it is to be done, rest with the master.

The same reasoning, which shows that the machinery and other instruments of labor should be safe, would demand that the bridges used in passing from one part of the premises to another, or the ladders used in ascending to or descending from labor, and that the passage ways in the premises of the employer and within the precincts of the place where the labor is to be done, should be safe and convenient; and, that at least, the same care and precaution be used for the safety of the servant, as for that of the stranger whose accidental presence, business may require within the same limits.

The claim, as stated, in the plaintiff's declaration, arises from the relation of master and servant, and from the neglect of the master in that relation. It is so argued by the counsel for the plaintiff. It is so resisted by the counsel of the defendants. It will be so examined and determined by the Court.

The rule is well settled, that a master is not liable to a servant for an injury caused by the neglect of a fellow servant in the same employ. Each servant assumes the risk of neglect on the part of fellow laborers.

The question here presented is, whether the master is liable to a servant for an injury caused by his own negligence and want of ordinary care.

By recurrence to the decisions of courts it will be perceived that the weight of judicial authority is in favor of the maintenance of an action like the present. In *Williams* v.

*Clough,* 3 Hurls. & Nor., 259, it was alleged in the declaration that the defendant was possessed of a granary and ladder leading up to it; that the ladder was wholly unfit and unsafe for use; that the plaintiff was a servant for hire of the defendant; that the defendant, knowing the premises, wrongfully and deceitfully ordered the plaintiff to carry corn up the ladder into his granary; that the defendant, believing the ladder to be fit for use and not knowing the contrary, did carry corn up the ladder to the granary, and, by reason of the ladder being unsafe, the plaintiff fell from it and was injured. It was held, on demurrer, that the declaration was sufficient. In *Roberts* v. *Smith & al.,* 2 Hurls. & Nor., 213, the injury arose from a rotten and defective scaffold, over which the plaintiff, a bricklayer, was compelled to pass in the course of his employment, and, in consequence of its rottenness, it broke, and the plaintiff fell to the ground. The case assumes the liability of the defendant, if the injury arose from his negligence, he knowing the condition of the scaffold and the servant being ignorant thereof. In *Vose* v. *Lancashire & Yorkshire R. Co.,* 2 Hurls. & Nor., 728, the cause of action arose from the defective rules of the defendant corporation, and their observance, and the defendants were held liable. In *Patterson* v. *Wallace,* 1 McQueen, 748, "I believe, by the law of England," says Lord CRANWORTH, "just as by the law of Scotland, in the actual state of the case with which we have to deal here, a master employing servants upon any work, particularly a dangerous work, is bound to take care that he does not induce them to work under the notion that they are working with good and sufficient tackle, whilst he is employing improper tackle and being guilty of negligence, his negligence occasioning loss to them." The same view of the law was taken by Lord BROUGHAM in that case. The case of *Marshall* v. *Stewart,* 33 Eng. L. & Eq., 1, was an appeal heard in the House of Lords, from a judgment of the Court of Session in Scotland, in an action by the representatives of a miner killed by injuries arising from the shaft of the pit being in an unsafe state, owing to the negligence of the defendant,

his employer. The law of Scotland was, throughout the case, treated as the same with the law of England. The servant, in that case, was killed while leaving his master's employment, without proper cause. "A master," says Lord CRAN-WORTH, "by the law of England and by the law of Scotland, is liable for accidents, occasioned by his neglect, to those whom he employs. I quite adopt the argument of the Solicitor General, that he is duly responsible while the servant is engaged in his employment, but then we must take a great latitude in the construction of what is being engaged in his employment;" and he further adds, that the liability of the master continues "whatever he does in the course of his employment, according to the fair interpretation of the words, *eundo, morando, redeundo,* for all that the master is responsible, and it does not, in my opinion, make the slightest difference that the workmen had, according to the finding of the jury, no lawful excuse for going out, no lawful excuse for leaving their work." "The master," remarks Lord BROUGHAM, in the same case, "who let them down, is bound to bring them up, even if they come up on their own business and not on his; he is answerable for the state of his tackle by which this lamentable accident was occasioned." In *Bryden* v. *Stewart*, 2 McQueen's Rep. Scotch Cases in House of Lords, 30, the Lord Chancellor, *inter alia,* said, " the law of both countries (England and Scotland) make a master liable for accidents occasioned by his neglect towards his servants."

In *Dixon* v. *Rankin*, 14 Court of Session Cases, 420, the Lord Justice CLERK, held, "the master of men in dangerous occupations is bound to provide for their safety. This obligation extends to furnishing good and sufficient apparatus and keeping the same in good condition, and the more rude and cheap the machinery, and the more liable on that account to cause injury, the greater obligation to make up for its defects by the attention necessary to prevent such an injury."

The English cases, cited by the counsel for the defendant, are not adverse to these views. In *Tarrant* v. *Webb*, 86 E. C. L,. 796, JARVIS, C. J., says, "The rule is now well estab-

lished, that no action lies against the master for the conse-
quences to a servant of the mere negligence of his fellow.
That, however, does not negative liability in every case. The
master may be responsible when he is personally guilty of
negligence," &c.  In *Ormond* v. *Holland*, 96 E. C. L., 102,
the liability of the master to the servant for personal neglect,
is fully affirmed.  "The rule is," remarks CROMPTON, J., "that
the master is not liable, unless there be personal negligence
on his part, which negligence may be either personally inter-
fering in the work or in selecting servants, who do interfere."

The same question has been repeatedly discussed in the
Courts of this country, and with the same result as in Eng-
land.  In *Indianapolis Railroad Co.* v. *Love*, 10 Indiana, 554,
the Court held the corporation liable if they allow an employee
to pass over a *defective bridge*, known to the corporation, and
not to the servant.  If the employee knows, or both company
and employee know, the company is not liable, unless it give
special directions.  But, in the present case, it is not necessary
to consider the effect of special directions, and as to that, we
give no opinion.  In *Keegan* v. *Western Railroad Co.*, 4 Seld.,
175, a railroad company which continued a defective and dan-
gerous locomotive, was held liable to its servant engaged in
running such machine, for an injury sustained by him, (without
negligence on his part,) in consequence of such defects.  In
*Noyes* v. *Smith*, 28 Vermont, 59, it was decided, that a mas-
ter was bound to exercise proper care and diligence in the
selection of the agencies and instruments with or upon which
he employs his servants; and if he fail to do so, he will be
liable to the servant for any injuries he may sustain therefrom.
In *Mad River & Erie Railroad Co.* v. *Barker*, 5 Ohio, N. S.,
541, the Court say, "if the defects which caused the injury
were actually unknown to the company or the conductor, and
were not discoverable by due and ordinary care and inspec-
tion, and yet, were such as resulted from a neglect of reas-
onable and ordinary care and diligence on the part of the
company, either in procuring or continuing to use cars and
machinery beyond the time when they could be safely used,

the company will be liable." In *Mc Gatrick* v. *Wason*, 4 Ohio, N. S. 566, the general rule is declared to be that an employer, who provides overseers and controls the operation of machinery, must see that it is suitable, and if a defect, unknown to a workman, injures him, which ordinary care could have prevented, the employer is liable for the injury. In *Byron* v. *N. Y. Telegraph Co.*, 26 Barb., 39, the plaintiff was employed to climb the poles and regulate the wires. The complaint alleged negligence in providing and using unsound poles and in not having guards, &c. The company was held liable. Negligence was proved by showing the corporation knew the defect in the pole. The defect, in that case, was not known to the plaintiff and was not discoverable by inspection. In *Hayden* v. *Smithville Man. Co.*, 29 Conn., 548, it was held, that a servant might maintain an action against his master for an injury caused by defective machinery, when the employer knew, or ought to have known of the defect, and the servant did not know it and had not equal means of knowledge. In *Fifield* v. *Northern Railroad*, 42 N. H., 225, the plaintiff, a brakeman in the employ of the defendant corporation, being injured without fault on his part, by their negligence in permitting the road to be blocked up with snow and ice, and their car to be out of repair, was held entitled to maintain an action to recover compensation for the damages by him so sustained.

If the danger is known and the servant chooses to remain, he assumes, it would seem, the risk and cannot recover. He might leave if he chose, but, choosing to remain, he cannot remain at the risk of the master. Every employer has a right to judge for himself how he will carry on his business, and workmen, having knowledge of the circumstances, must judge for themselves whether they will enter his service, or, having entered, whether they will remain. *Hayden* v. *Smithville Man. Co.*, 29 Conn. 548. " A servant," remarks POLLOCK, C. B., in *Dynen* v. *Leach*, 26 Law Jur., 221, "cannot continue to use a machine he knows to be dangerous, at the risk of his employer." In *McNeil* v. *Wallace*, 15 Court of Sessions

Cases, 818, a collier sued his employer for an injury received by the fall of the roof of his excavation. It was the custom of the mine for the workmen, each to prop his own excavation, the wood for that purpose being furnished by the coal master at the mouth of the mine. No wood was furnished, but the workman went on to work, although it was, as the witness agreed, " a seen danger" and the workmen were warned of it. The Court held, as he went on to work, he assumed the risk himself and could not recover of his employer.

Neither can the servant recover if his own neglect contributed to the injury. "In England, in Scotland, in every civilized country," remarks Lord CRANWORTH, in *Paterson* v. *Wallace*, 28 Eng. L. & Eq., 48, " a party, who rushes into danger himself, cannot say, that is owing to your negligence." The master is not liable for the folly, the carelessness or the rashness of his servant. The plaintiff, to recover, must show ordinary care on his part.

The declaration should allege that the insufficiency of the bridge in question, was unknown to the plaintiff, and that it was known to the defendant, or that, but for want of all proper care and diligence, it would have been known. *Noyes* v. *Smith*, 28 Verm., 59 ; *Williams* v. *Clough*, 3 Hurls. & Nor. 258 ; but, as was remarked by BRAMWELL, B., in the case last cited, " that is a mere question of special pleading."

As the declaration is amendable on terms, we have determined the question presented as if it were free from all defects.

But the declaration, upon principle, must be deemed defective. Whether to be amended or not, and on what terms, will be determined at *Nisi Prius,* by the Justice presiding.

> *Demurrer sustained ; —*
> *Declaration bad — and*
> *Exceptions overruled.*

TENNEY, C. J., CUTTING, MAY, GOODENOW and DAVIS, JJ., concurred.