# Eureka Company *v.* Bass, Adm'r.

*Action by Administrator of Employee against Employer for Wrongful Act or Omission causing Death.*

1. *Diligence required of employer, in matter of machinery and materials.* The employer is bound to use due care and diligence, not only in furnishing in the first instance, but also in maintaining, suitable and safe materials, machinery and instrumentalities, for the work or duty required of his employees, and is ordinarily, liable for any injury resulting from the neglect of this duty; but he is under no obligation to

[Eureka Co. v. Bass, Adm'r.]

take any better care of the employee than the latter may be reasonably expected to take of himself, who'assumes, when entering on the service, all the usual and ordinary risks of the employment.

2. *Contributory negligence in entering mine prematurely.*—Whether the deceased employee, who was engaged in blasting rock with dynamite in t'e employer's mine, and was killed by the explosion of a dynamite cartridge, was guilty of negligence in prematurely entering the mine twenty minutes after the fuse had been lighted, while cartridges generally exploded two or three minutes after the fuse was lighted, is not a question of law, but was properly submitted to the jury as a question of fact.

3. *Knowledge and notice of defects in machinery or materials, and consequent danger.*—If the employee, while engaged in the service, acquires knowledge of any defect in the materials, machinery, or instrumentalities used, and notice thereby of an increased risk, or danger, and afterwards continues in the service without objection, or notice to the employer, he assumes the increased risk himself; but he may notify the employer of the defect, and continue in the service for a reasonable time. relying on the employer's promise to remedy the defect; yet if the defect is not remedied within the promised time, his further continuance in the service is at his own risk, and he is guilty of contributory negligence.

4. *Corporation as employer; notice to agent.*—When the employer is a private corporation, the duty to furnish and maintain suitable appliances and instrumentalities is corporate, although necessarily intrusted to an agent, or agents; and notice of a defect, given to the agent in charge, binds the corporation.

5. *Opinion and statement of collective facts.*—A witness, having testified as to the manner in which the holes in the rock were drilled and prepared for the cartridges, may be asked whether, at the time of the accident, the holes were "properly charged" before the fuse was ignited, that being a collective fact, and not a mere opinion; but not, "within what time would it be safe to return to a hole charged with a dynamite cartridge which had failed to explode."

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This was an action by the appellee, William J. Bass, as the administrator of John Moyle, deceased, against the appellant, the Eureka Company. The nature of the case is stated in the opinion.

The complaint as amended contained four counts. The *first* count alleged, generally, that the death of Moyle (for damages for which the suit was brought) "was caused by the wrongful act, omission, or culpable negligence of the defendant, or by the wrongful act, omission, or culpable negligence of some officer or agent of defendant." The *second* count, after setting forth that the defendant was engaged in mining iron ore and the manner in which the mining was done by blasting as stated in the opinion, averred, substantially, that Moyle was at the time of his killing a servant of the defendant and engaged in its mine as boss thereof; that it was the duty of the defendant to furnish proper instrumentalities for carrying on said blasting, but, not observing this duty, the defendant furnished Moyle with

fuse, which proved to be inferior and in a bad and defective condition, and which, when inserted in the holes bored for blasting and ignited, but failed to convey the fire to the explosive, and in consequence blasts had failed to occur on several occasions prior to the one on which Moyle was killed; that, at the time of his death, Moyle, in the performance of his duty as boss in the mine, had directed the preparation or charging of a hole and ignition of a fuse for blasting, and had withdrawn from the mine to await the blast, but the fuse, being inferior and in a bad and defective condition, failed to convey the fire to the explosive material for such an unusual length of time, to-wit, twenty minutes, that Moyle had a right to believe, and did believe, that the blast had failed as others prior thereto had done, and returned to the hole for the purpose of having it reopened and fresh fuse inserted, and, while thus engaged in the performance of his duty as servant of the defendant and boss of the mine, the blast went off and by reason of the bad and defective condition of the fuse, he was killed; and that prior thereto, Moyle had informed the defendant that the fuse was inferior and in a bad and defective condition, and unsafe, and defendant had promised to replace it with good fuse, and urged Moyle to continue the use of said fuse until it could be replaced with better, but defendant negligently omitted to replace said fuse with good fuse, and Moyle, relying upon said promise, continued to use said fuse and was killed.

The *third* count was substantially the same as the *second*, except that there was no averment as to the time the plaintiff waited before returning to the hole, and instead of averring notice of the defective condition of the fuse to the *defendant*, and promise by the *defendant* to replace it with better, &c., it averred that Moyle informed the *superintendent* of the defendant's said business, who had general charge of said business, and a part of whose duty it was to select materials for the work, and to receive notice of their unfitness or defectiveness, that the fuse was inferior and in a bad and defective condition and unsafe, and that said *superintendent* had promised to replace it with good fuse, and urged Moyle to continue the use of said fuse until it could be replaced with better, but said *superintendent*, notwithstanding he was within a few hours' access to good fuse, and by ordinary diligence could have procured it before Moyle's death, negligently omitted to replace said fuse with good fuse for *several days* after he had been so notified by Moyle and had promised to replace said fuse, and Moyle, relying upon the promise of said *superintendent*, continued

[Eureka Co. v. Bass, Adm'r.]

to use said fuse until he was killed ; and that Moyle's death was caused by reason of the defective, bad and inferior condition of said fuse and the negligence of said *superintendent* in failing to provide better fuse, as he had promised to do.

The *fourth* count was substantially the same as the *second* and *third*, except that there was no averment that the plaintiff returned to the hole after the ignition of the fuse, and, as to notice of the defective condition of the fuse and the promise to replace it with better, &c., it averred, that " *two or three days*" prior to the death of Moyle, he notified the superintendent of defendant, who was charged by the defendant with the duty of receiving such notice, that the fuse was in a defective condition, and said superintendent, who was the general superintendent of the defendant's said business, and as such had control and authority over the employees of defendant in its mines and mining and over Moyle as an employee of defendant therein, promised Moyle to furnish good and better fuse than that in use, and urged and directed him to continue the use of the fuse complained of until better could be had, and Moyle, relying upon this promise, continued to use said fuse, and, the defendant and its said superintendent and officers or agents failing and omitting negligently to furnish better and other fuse, Moyle was killed.

The defendant demurred to each count of the complaint, on the following grounds :   1. To the *first* count, because it was too general and indefinite.   2. To the *second* count, because its averments showed that Moyle knew of the alleged defective condition of the fuse and his death was caused by his contributory negligence.   3. To the *third* count, on the same grounds as to the *second*, and, also, because its averments showed that Moyle was the boss or superintendent of that particular work, and knew of, or by reasonable care and caution could have known, the danger of approaching said fuse, and that his death was the result of his own want of care and prudence.   4. To the *fourth* count, because its averments showed that the death or injuries of Moyle were caused by the contributory negligence of Moyle.   5. To the complaint and each count thereof, because they showed no cause of action.

The court sustained the demurrer to the *first* count and overruled it as to each of the others, and the defendant excepted separately to the action of the court in overruling each demurrer so overruled.

The defendant then pleaded :   1. The general issue. 2. Contributory negligence on the part of the plaintiff.

On the trial, two witnesses for the plaintiff, Gray and

[Eureka Co. v. Bass, Adm'r.]

Johnson, who had been engaged in mining for several years, and who were present in the mine working under Moyle at the time he was killed, and one of whom, under Moyle's supervision, charged and prepared for blasting the hole, the explosion of which resulted in Moyle's death, after having testified to the manner in which the hole was charged, were asked by the plaintiff, "if the hole was properly charged." The defendant objected to the question; the court overruled the objection and the defendant excepted. The witnesses then answered that the hole was properly charged.

Rolla Earnest, a witness for the plaintiff, testified that "three or four days before Moyle was killed, he (witness) told Mr. Robert Stephens, superintendent of the Eureka Company, that the fuse would not fire off, and he (Stephens) promised to get other fuse." The defendant objected to the admission as evidence of the witness' statement of what he said to Stephens, and moved to exclude it; the court overruled the motion, and the defendant excepted.

George Williams, a witness for the plaintiff, who was time-keeper at the mine where Moyle was killed, testified that he was working under the immediate control of Samuel Stephens, the boss in the defendant's employ at said mines, at the time of the killing of Moyle, and that he had instructions from said Stephens to receive all complaints from the men and orders for material, and to report the same to said Stephens, who would either himself order, or have him (witness) order more material from the company's office; and that about two weeks before Moyle's death, there were a good many complaints to him (witness) of the fuse, and he wrote a note to Mr. Falls, the company's book-keeper, telling him that the fuse was bad. The defendant objected to the admission as evidence of the statement of the witness as to what he wrote Falls about the fuse being bad, because it was illegal and irrelevant evidence, and the writing was not produced or its loss accounted for. The witness stated that he sent the letter to Falls and never had it afterwards, and did not know where it was; and thereupon, the court overruled the defendant's objection and refused to exclude said evidence, and the defendant excepted. Afterwards, on cross-examination, the witness stated, that he did not know of his own knowledge whether the fuse was good or bad.

Robert Stephens, a witness for the plaintiff, testified that he was superintendent of the defendant, and as such had charge of employing the men and supplying the fuse and other material for blasting; that he had employed Moyle,

who was overseer of the mine in which he was killed, and that some five or six days before Moyle's death, he went to the mine to hurry Moyle up and insisted on his getting out ore faster, and thereupon Moyle told him (witness), that he could not get out ore faster, unless he (witness) got other fuse, that the fuse was bad and too much time would be lost with it ; that he then told Moyle to do the best he could and he (witness) would send him other fuse. The defendant moved to exclude the evidence as to what Moyle said to the witness, and the witness replied to Moyle, but the court overruled the motion, and the defendant excepted. This witness further testified, that he did not go to the mine again before Moyle's death, but that two days before his death, he wrote and sent to Moyle a note, urging him to hurry up and get out more ore, that the furnaces were needing it and Christmas was coming and a supply must be gotten on hand for that time. The defendant objected to the witness stating the contents of the note, without producing it or accounting for its loss. The witness then stated that he sent the note to Moyle and had not since had it, and did not know where it was, and the court thereupon overruled the objection, and the defendant excepted. The plaintiff then asked this witness if he bought other fuse after Moyle's death ; to which he replied, that he ordered other fuse for the company after Moyle's death. The defendant objected to the question and moved to exclude the answer. The court overruled the objection and motion, and the defendant excepted. This witness also testified that Moyle was thirty-three years old, in good health and stout, and getting $3.00 per day at the time of his death. The defendant moved the court to exclude this evidence, the court overruled the motion, and the defendant excepted.

L. W. Johns, a witness for the defendant, testified that "at Pratt Mines the rule was not to allow the miner to go to the hole at all, when a charge fails to go off, but to leave it and drill and charge another hole." The plaintiff objected to the witness stating what the rule was at Pratt Mines. The court sustained the objection and ruled out the evidence, and defendant excepted.

Wm. Perkins, a witness for the defendant, testified that in all cases of accident like that resulting in the death of Moyle, he considered it the fault of the man handling the fuse. The plaintiff objected to this evidence, and it was ruled out by the court, and the defendant excepted.

The defendant, having introduced evidence tending to show that there was a rule among experienced miners as to

returning to a hole after it had been charged for blasting and had hung fire, asked the following questions of a number of witnesses, shown to be expert miners : 1. "What was the rule among experienced miners as to the time of returning to a hole which had been charged with dynamite cartridge and cap and fuse for blasting, when the charge had failed to fire or had hung fire?" 2. "What was a reasonable and safe time for waiting upon a charge before returning to it after it had been lighted and had hung fire?" 3. "Would it be reasonably safe to return to such hole in twenty minutes ?" 4. "Would it be reasonably safe to return to such hole in thirty minutes ?"

The plaintiff objected to each of these questions as they were propounded. The court sustained the objections and excluded each question, and the defendant separately excepted to the exclusion of each question.

There was evidence on the part of the plaintiff tending to show that the fuse was bad, and had frequently a short time before Moyle's death hung fire ; that good fuse would not hang fire, and if it went off at all would do so in ten minutes, and ordinarily would produce an explosion in from two to three minutes ; that W. J. Falls was the bookkeeper of the defendant at the mines and represented the secretary and treasurer of the defendant, who resided in Cincinnati, and it was the duty of Falls to order fuse and other supplies needed by the company for blasting, when authorized by the superintendent, Robert Stephens.

There was evidence on the part of the defendant, that the fuse bought and furnished by defendant was of a standard quality and as good as could be had in the market; that the fuse used by Moyle at the time of his death was good ; that if fuse was defective, such defect was not discoverable by reasonable care, and defective fuse would unavoidably occur among the best ; that good fuse had been known to hang fire from two minutes to six hours and longer, and that this might be occasioned by improperly charging the hole for blasting, and a number of other causes.

The defendant excepted to the following portion of the general charge of the court to the jury : "If the jury believe from the evidence, that the defendant, while Moyle was its overseer as boss at its mines, furnished for Moyle's use in the mines bad fuse, and that the superintendent of the company, as such, had authority to furnish the fuse at defendant's said mines; and that he was informed of the defective condition of the fuse by Moyle four or five days before Moyle's death, and the superintendent promised Moyle to furnish better fuse, and thereby induced Moyle to

[Eureka Co. v. Bass, Adm'r.]

continue in defendant's service, using said fuse, and if the defendant directed Moyle to continue the use of such fuse until the better fuse promised was furnished, and if the defendant failed to comply with its promise to furnish better fuse, and if the explosion and the death of Moyle resulted proximately from the defective character of such fuse so used by him, then the plaintiff has made out a *prima facie* case, and the burden of proof would be upon the defendant to show that Moyle's negligence contributed to his death."

The court gave the following charge, at the request of the defendant:

"Though the jury may believe that the fuse was defective, yet if they further believe, from the evidence, that the defect, if any existed, was such as could not be discovered by reasonable care, and such a defect as would be found in the best fuse, then the jury must find for the defendant."

In explanation of, and to be taken in connection with this charge, the plaintiff asked the following charge, which the court gave and the defendant excepted:

"Although the jury may believe that the defendant was reasonably careful in procuring fuse in the first instance, this fact alone would not excuse them from liability if the fuse was really bad and the defendant knew of it and promised to remedy the defect."

The defendant then asked the following charges, which the court refused, and to the refusal of each of which the defendant excepted:

"4. If the plaintiff's intestate was killed by defects in the fuse, plaintiff must show, before he can recover, some fault in the defendant in failing to use ordinary care in *furnishing* the fuse, and if the jury find that the defendant did furnish reasonably safe fuse, then plaintiff can not recover in this action."

"5. When a servant enters on an employment, from its nature necessarily hazardous, he accepts the service subject to the risk incidental to it, or if he thinks proper to accept such employment with appliances defective, and with knowledge of the defect, continues in the service, the master can not be held liable for any injuries to the servant resulting from such defective appliances."

"6. If the servant be fully capable of choosing and contracting for himself, and with full knowledge of the risk which he assumes, chooses to undertake a hazardous employment, put himself in a dangerous position, or to work with defective tools or appliances, and is injured thereby, he can not recover for such injuries."

"7. If the jury find, from the evidence, that the de-

ceased, John Moyle, was well acquainted with the character of the fuse and used it, knowing of its defects, then the plaintiff can not recover."

"8. The law does not require the master to take more care of the servant than he would of himself, and if the jury find that the officers of the company used reasonable care and diligence in the *selection* of the fuse, then they must find for the defendant."

"9. The defendant is not required to furnish the most approved fuse, or the very best; and if the jury find that the defendant used reasonable care and diligence in supplying John Moyle with fuse, and that the fuse furnished was as good as could be had in the market, then the jury must find for the defendant."

"11. While previous knowledge by John Moyle of the danger or defect in the fuse, if the fuse was defective, is not conclusive evidence of negligence in the said Moyle's failing to avoid it, still the fact of his knowledge of the defect is a strong circumstance in the chain of evidence, to establish negligence on the part of said Moyle at the time of his death."

"12. Five or six days would be an unreasonable time for the deceased to wait for other fuse, and even though deceased reported the fuse to Robert Stephens, and Robert Stephens was authorized to receive such notice, still if the jury further believe that deceased remained in the service of the company, using the same fuse, five or six days after deceased notified Robert Stephens and was killed, then plaintiff can not recover."

"13. If the jury believe, from the evidence, that the only fault about the fuse was that it was slow to fire off, and that at the time of his death John Moyle knew of this, and that when he told Robert Stephens to furnish better fuse, said Moyle objected to it on account of its being slow to fire, then the jury must find for the defendant."

"14. If the jury believe that Falls was the man who did all the ordering for material, then they must find for the defendant."

"15. Though the jury may believe, from the evidence, that Robert Stephens was superintendent of the company, and that Moyle notified him of the fuse, and that Stephens promised to furnish other fuse, and if they further believe, from the evidence, that all orders for supplies were sent to Falls and he did the ordering, then the plaintiff can not recover."

"16. If the jury find that the deceased knew of the defect in the fuse, if there was any defect, then it was his duty

Eureka Co. v. Bass, Adm'r.]

to quit the service of the company; and if the deceased continued in the service of the company after he discovered the fuse to be bad, then he took upon himself the risk, and plaintiff can not recover in this suit; and the promises of any officer of the company to get other fuse would not justify the deceased in still remaining in the service of the company and continuing to use the fuse for any longer than a reasonable time for the company to get other fuse."

"17. The fact that a servant remains in the service after he knows of a defect in the appliances, and after a promise by the master to repair, is ordinarily conclusive evidence of contributory negligence, which will bar a recovery."

"18. The deceased, if he could rely upon the promise of Robert Stephens, and continue in the service after he knew of the defective fuse, if the fuse was defective, could remain only for a reasonable time to see if the promise would be performed, and if the deceased did remain in the service, using such fuse for an unreasonable time, and was killed by reason thereof, the plaintiff can not recover."

"19. The master is under no higher duty to provide for the safety of the servant than the servant is to provide for his own safety, and if the knowledge of the master and that of the servant in respect to the character of the appliances are equal, so that both are either without fault or in equal fault, the servant can not recover of the master."

"20. The negligence of Robert Stephens, or his failure to supply other fuse, is but the negligence of a co-employee, for which the defendant is not liable."

"21. If the jury believe the evidence, they must find for the defendant."

The rulings of the court, and the charges excepted to, are assigned as error.

R. H. PEARSON and S. F. RICE, for appellant.—The intestate having notice of the defect in the fuse, could not rely on any assurance of the superintendent of the company to furnish other fuse or remedy the defect, after a reasonable time for making good such assurance had elapsed.—Wharton on Neg., § 221; Beach on Contributory Neg., 372; *Buzzell v. Laconia Mf'g. Co.* 48 Me., 113; *G. H. & San Antonio Ry. Co. v. Drew,* 46 Am. R. 261; *Mf'g. Co. v. Morrissey,* 48 Am. R. 673; *McGlynn v. Brodie,* 31 Cal. 376; *Lenoir v. Ward,* 102 Eng. Com. Law Rep. 385 (1 Ellis & Ellis, Q. B.). There was a material variance between the proximate cause of the intestate's death as alleged and as proved. By his own mistake or recklessness, in going back to the unexploded hole, he caused his own death. This variance justified the

14

general charge. All the charges asked by the defendant and refused by the court should have been given. The charges given for the plaintiff were erroneous and should have been refused. The court erred in its rulings on the evidence.

The allegations of the second, third and fourth counts of the complaint showed that the plaintiff had been guilty of contributory negligence, and the demurrers thereto should have been sustained.—See authorities, *supra.*

R. H. STERRETT, and E. K. CAMPBELL, *contra.*—1, A master is bound to use reasonable care in *selecting* appliances to be used by his employees, and this reasonable care is graduated by the character of the employment. This duty does not cease when reasonably safe appliances have been *furnished,* but is a *continuing one,* and the master must see that the appliances remain reasonably safe for the purposes of their use.—Shear. & Red. Neg. § 92; Cooley on Torts, 561; Wood's Master & Servant, §§ 329, 345; *Walker v. Bolling,* 22 Ala. 294; *M. & M. Ry. Co. v. Smith,* 59 *Ib.* 247; *Smoot v. M. & M. Ry. Co.,* 67 *Ib.* 13; *Flike v. Boston & Albany R. R. Co.,* 53 N. Y. 549; *Laning v. N. Y. Cen. R. R. Co.,* 49 N. Y. 521; *Patterson v. Pittsburg & Connellsville R. R. Co.,* 76 Penn. St. 389; Beach on Con. Neg. § 124; *Greenleaf v. Ill. Cen. R. R. Co.,* 29 Iowa, 14; *Green v. M. & St. L. Ry. Co.,* 31 Minn. 248. 2. After notice to master of defect in appliances and promise by master to remedy defect (and, particularly, after urging servant to remain in employ as in this case), the servant may rely upon the promise and continue in the employment, without being guilty of contributory negligence.—Wood's Master & Servant, §§ 360, 376, 378, 380, 386; Shear. & Red. Neg. § 31; Cooley on Torts, 559; *Patterson v. P. & C. R. R. Co., supra; Green v. M. & St. L. R. R. Co., supra; Lee v. Woolsey,* decided by Penn. Sup. Ct., 1885—see Cent. L. J., Vol. 1, No. 18, p. 352; *Clarke v. Holmes,* 7 Hurls. & Norm. 937; *M. & M. Ry. Co. v. Orenshaw,* 65 Ala. 566; *Thompson v. Duncan,* 76 *Ib.* 334. The demurrers were, therefore, properly overruled. As to the demurrer on the ground that the complaint shows no ground of action, see *Grinnell v. Henderson,* 66 Ala. 521; *Williams v. Bowdin,* 68 *Ib.* 126. 3. The evidence of Gray and Johnson that the hole was properly charged, was competent after they had given the particulars as to how charging is done.—*Shook v. Pate,* 50 Ala. 91; *Wood v. Brewer & Brewer,* 57 *Ib.* 515. The question as to the rule among miners in regard to returning to blasts, &c., were properly excluded.—*Clarke v. Fisher,* 19 Am. Dec. 402; 1 Green. Ev.

(14th Ed.), § 440, notes a and b; *Transportation Line v. Hope*, 95 U. S. Rep. 297; *Andrews & Bros. v. Jones*, 10 Ala. 460; *Otis v. Jayne & Thom*, 23 *Ib.* 469; *City Nat. Bank v. Jeffries*, 73 *Ib.* 183; *Oleson v. Talford*, 37 Wis. 327; *Hopkins v. R. R. Co.*, 78 Ill. 32; *Morris v. East Haven*, 41 Conn. 252; 34 Albany L. J. No. 17, p. 334. The other rulings of the court on evidence were free from error. 4. The charges given by the court were correct and those refused erroneous. See authorities cited *supra*, under clauses 1 and 2 of this brief. Charge *eighteen* was properly refused, because the burden of showing negligence on the servant's part was on the defendant, and this is the case however long the servant continues in the service, even though the master fail to repair.—Wood on Mast. & Serv. § 380; *Thompson v. Duncan*, 76 Ala. 334; *Patterson v. P. & C. Ry. Co.*, *supra;* and *Laning v. Ry. Co.*, *supra.* Charges 5, 6 and 13 were abstract.

SOMERVILLE, J.—The action is brought for the alleged negligent killing of the plaintiff's intestate, one Moyle, an employee of the defendant, which occurred while the deceased was engaged in superintending the blasting of iron-ore in the defendant's mine, and was produced by the explosion of dynamite used in the process of blasting. The accident occurred in December of the year 1884. The preparation for blasting was conducted by drilling a long narrow hole in the iron-ore rock, five or six feet deep, and about one and a half or two inches in diameter. In this cavity was inserted a dynamite cartridge, to which were attached a percussion cap and a fuse.

The negligence specially alleged on defendant's part was in failing to supply a good quality of fuse, after notice of an existing defect, which rendered the further use of this material dangerous to the employees, a fact well known to the deceased. The deceased remained in the service of the defendant five or six days after acquiring knowledge and giving notice of the defect, before he was fatally injured—his death being caused by his entrance into the mine about twenty minutes after the lighting of the fuse, under the belief that the fire communicated to it had been extinguished. Good fuse was shown to ordinarily produce an explosion of the dynamite in from two to three minutes under similar circumstances. The main defense relied on is that of contributory negligence on the part of Moyle, the deceased.

The employer or master is bound to use due care and diligence, not only to furnish in the first instance, but to *maintain,* suitable and safe material, machinery and instrument-

alities for the work or duty required of his employees, and he is ordinarily liable for any injury resulting from his neglect of this duty.—*L. & N. R. R. Co. v. Allen*, 78 Ala. 494; *Buzzell v. Laconia M'f'g Co.*, 48 Me. 113; Wood on Master and Servant, § 359. But the law imposes no obligation on the master to take any better care of the servant than the latter may be reasonably expected to take of himself, and every employee, upon entering service, presumptively contracts to assume all the usual and ordinary risks of the employment.—1 Addison on Torts (Wood's ed.), § 564, p. 603. "In legal presumption the compensation is adjusted accordingly."—*Farwell v. The Boston, &c., R. R. Co.*, 4 Metc. 49. There is no difficulty about these principles, which have been often decided, and with them the rulings of the court below in no wise conflict.

The two points most earnestly pressed upon us are : (1) That the conduct of the deceased, in entering the mine within so short a time as twenty minutes from the moment of setting fire to the fuse, must, as matter of law, be adjudged by the court to be such negligence as to bar a recovery in this case, such conduct, as is argued, being reckless, and contributing proximately to the death of the deceased : (2) That, even if this is not so, the deceased was guilty of contributory negligence by continuing in the defendant's service for an *unreasonable length of time* after notice given, and the failure of the defendant to repair the defect complained of as existing in the fuse.

The first contention does not strike us favorably. We can not say, considering only the undisputed testimony of the case, that it is so free from doubt as to admit of no other rational inference except that of negligence, or that different minds could not reasonably draw opposite conclusions from these facts touching the question of Moyle's negligence in prematurely entering the mine by which he was brought to his death. The inference of negligence not being clear and certain, the question of its existence was not a question of law, but of fact, and as such was properly left to the determination of the jury.— *City Council of Montgomery v. Wright*, 72 Ala. 411 ; *L. & N. R. R. Co. v. Allen*, 78 Ala. 494. The demurrer to the several counts of the complaint was for this reason properly overruled ; and so, likewise, there was no error in refusing the general charge requested by the plaintiff.

The second proposition is one which is not entirely free from doubt, and upon which the authorities are not harmonious. In fact, it does not seem to have been clearly considered, or stated with any great degree of precision in

the earlier decisions bearing on the subject of the servant's contributory negligence, resulting in his injury from the continued use of defective appliances in the prosecution of his employment. The question is presented in this case by the refusal of the court to give the charge numbered 18 in the record. This charge substantially asserts the proposition, that the deceased, if cognizant of the defect in the fuse, could remain in the defendant company's service only for *a reasonable time*, after notice of such defect was given to the company, to see if the promise to remedy it, as made by the company, would be performed, and if he remained longer, and continued using the defective fuse for an unreasonable length of time, and was killed by reason of such negligence, the plaintiff would be barred of a recovery in the action.

This charge was, in our opinion, a correct enunciation of the law as applicable to the case, and should have been given.

The employee or servant, must be charged with the exercise of ordinary prudence. He is not compellable, nor is it prudent for him, to remain in the service of his employer, if by doing so he subjects himself to any extraordinary hazard or peril not incident to the usual mode of conducting the business or employment. If he has notice of any defect in the appliances or instrumentalities used by him, from which injury may be reasonably apprehended, he should, generally speaking, quit the service for his own protection. Notice of the defect merely does not, however, impute to him negligence. He must have notice of the danger which then becomes a circumstance from which negligence may be inferred, if he continues silently and without objection in the prosecution of his employment.—Wood on Master & Servant, §§ 336, 352, 359.

It is everywhere admitted, that, if the danger encountered by the employee, through his continuance in the service, is so obvious and inevitable, as that no person of ordinary prudence—that no one but a reckless man—would venture upon it, under the circumstances of the particular case, then the continuance of the peril is at his own risk, and the employer is acquitted of responsibility, upon the ground of the employee's contributory negligence.—*Patterson v. Pittsburg, etc. Railroad Co.* (76 Penn. St. 389), s. c. 18 Amer. Rep. 412 ; *Snow v. Housatonic Railroad Co.*, 8 Allen (Mass.) 441.

Where, however, the employee or servant, electing not to abandon his employment, gives notice to the employer of such defect in the appliances or instrumentalities used by him, and the employer promises to remedy the defect, the relationship of the contracting parties at once undergoes a

[Eureka Co. v. Bass, Adm'r.]

change. The assurances of the employer that the danger shall be removed is an agreement by him that he will assume the risk incident to the danger for a reasonable time. It obviates the objection that the continuance of the servant in the service was an implied engagement by him to assume such risks, pursuant to the original presumption upon his entering the service. —*Hough v. Railroad Co.*, 100 U. S. 213 ; Cooley on Torts, 559. We have said that the carrying of the risk by the employer will be implied to continue only for a reasonable time after the making of the promise by him to remove the danger producing it. The injury, in other words, must have occurred within the time at which the defects were promised to be removed. If the employee continues to expose himself to the danger by remaining in the service longer than this, he does so in face of the fact that the promise of the employer is violated, and that he has no reasonable expectation of its fulfillment. He can no longer, therefore, rely upon the promise, and must know that his continuance in service under such circumstances is equally as hazardous and hopeless of remedy as if no assurance or promise had ever been made. A promise already broken can afford no reasonable guaranty of the fulfillment of any expectation based on its disappointed assurances. For a servant or employee to persist in exposing himself to danger on the faith of such a promise may often be a want of that ordinary prudence which the law exacts of him at every stage of his employment, according to the degree and nature of the danger. His continuance in the service for an unreasonable length of time after such promise is a waiver of the defects agreed to be remedied by his employer. The risk, therefore, again becomes his own, and his conduct, as we have said, although not necessarily, or *per se* negligent, may or may not become negligent according to the circumstances of the particular case.—*Greene v. Minn. & St. Louis R. R. Co.* (31 Minn. 248), s. c. 47 Amer. Rep. 785 ; *Missouri Furnace Co. v. Abend*, (107 Ill. 44), s. c. 47 *Ib.* 425 ; *Manufacturing Co. v. Morrissey*, (40 Ohio St., 148), s. c. 48 Am. R. 669 ; *Woodward Iron Co. v. Jones*, MSS. Ala. — ; Shear. & Redf. on Neg., § 96 ; Beach on Contr. Neg., § 140 ; 2 Thomp. Neg. 1009, 1010 ; *Patterson v. Pittsburg, etc. R. R. Co.*, 18 Amer. Rep. 412, *supra ; Laning v. The N. Y. Cent. R. R. Co.* (49 N. Y. Rep. 521), s. c. 10 Amer. Rep. 417 ; Saunders on Neg. 127 ; *Holmes v. Clarke*, 6 Hur. & N. 349 ; 30 L. J. Ex. 135 ; Wood on Master & Servant, § 361.

The duty of the defendant to furnish and maintain suitable material and appliances for the prosecution of its business is one of that class of duties which the law exacts of it

as master or principal without regard to the rank or grade of the agent delegated to perform such duty. When the principal or employer, as here, is a corporation, this is a corporate duty, and its failure to perform it is corporate negligence. As to such acts the agent is the *alter ego* of the principal—the servant occupying the place of the master as much as if the latter were present in person, acting or failing to act for himself. Cases of this sort do not fall within the rule that the master is not responsible for the negligence of one fellow servant resulting in injury to a co-employee in the same common business. The same rule of *respondeat superior* applies where agents are authorized to employ fit servants for the master, or the general management of the master's business is committed to one fully authorized to conduct it.—*Tyson v. S. & N. R. R. Co.*, 61 Ala. 554; *Flike v. The Boston, etc. R. R. Co.*, 13 Amer. Rep. 545; *Corcoran v. Holbrook* (59 N. Y. 517), s. c. 17 Amer. Rep. 369; *Walker v. Bolling*, 22 Ala. 294; Wood on Master & Servant, §§ 390, 436, 454; Cooley on Torts, 560, 562; *Wilson v. Willimantic Linen Co.* (50 Conn. 433), s. c. 47 Amer. Rep. 653.

Stephens being the general superintendent of the defendant's business, charged with the duty of supplying fuse for blasting, and Falls having authority also to make such purchases, when needed, notice of the defect given to either of these agents was notice to the company itself. The court so held in all its rulings.

We have examined the other rulings of the court as shown in the general charge, and in the giving and refusing of the charges requested, and find no error in them.

The rulings on the evidence seem to be equally free from error. We note only such as appear to be least free from doubt.

The question propounded to the witnesses, Gray and Johnson, as to whether the holes were "properly charged" before ignition of the fuse, was free from objection. It called rather for the statement of a collective fact than for a mere opinion. The witness had already stated the customary mode of charging such holes, and the facts and conditions which constituted the preparation prior to the explosion of the dynamite, and the answer called for was a mere affirmation or denial of these facts or conditions as existing in this particular case.

The several questions, however, were objectionable and properly excluded, which were propounded by the defendant to various witnesses, asking "within what time it would be reasonably safe" to return to a hole charged with dynamite cartridges, after ignition and failure to explode? what

was "the rule on this subject among experienced miners in like cases?" and others of an analogous character. The effect of these questions, if allowed, would have been to take from the jury the question of negligence, and try it by the opinions of witnesses and the conduct of others, whose prudence was entirely unknown.

The other exceptions based on the admission and exclusion of evidence are not well taken.

Reversed and remanded.