(49 South. 942.)

No. 17,382.

SANDERS v. NATALBANY LUMBER CO., Limited.

(April 26, 1909. Rehearing Denied May 24, 1909.)

1. MASTER AND SERVANT (§ 243*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

It was the duty of the employé to make known to the foreman, who was near, within hailing distance, his inability to perform the work in the manner that the foreman had directed him.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 759; Dec. Dig. § 243.*]

2. WEIGHT OF TESTIMONY.

The weight of the testimony shows that it was possible to perform the work in the manner directed.

3. MASTER AND SERVANT (§ 243*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

The employé did not follow directions. He undertook, instead, to perform the work his own way, and met with an accident for which the defendant cannot be held liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 759; Dec. Dig. § 243.*]

(Syllabus by the Court.)

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Clay Elliott, Judge.

Action by W. W. Sanders against the Natalbany Lumber Company, Limited. Judgment for plaintiff, and defendant appeals. Reversed.

The following is the sketch referred to in the opinion:

T. M. & J. D. Miller, Guy Joseph Ray, and Kemp & Spiller, for appellant. Thomas Milton Bankston, Robert Guy Richardson, and Matthew Jackson Allen, for appellee.

BREAUX, C. J. Plaintiff (a carpenter, aged 42 years) sued the defendant for damages in the sum of $10,000.

He was injured while at work for defendant. He was under the orders of a foreman of the defendant company at the time, working at a dry kiln.

In this kiln there was an endless chain

used in pulling cars into the kiln or out of the kiln, as the defendant, through its employés, fills the kiln with mill product to be dried or takes it therefrom.

His injuries were severe. They resulted in the amputation of his foot and part of his leg.

He was at work with another employé putting hinges on the door of the kiln.

The endless chain was broken a few feet in rear of the car that was in the building. The broken chain and the car prevented plaintiff and his co-employé from working. The foreman said to them that he would take the car out. The chain which was underneath the car was hitched to it, and the electric current was applied to haul the car out.

The electric motor is an original idea in operating a kiln; that is, in putting in or taking out lumber therefrom.

The foreman directed the plaintiff and his co-employé to step to the west side of the sprocket or sheave wheel in front of the kiln, and at that point take up the slack in the endless chain.

This was done by these employés in accordance with the direction of the foreman. They took up the chain and pulled it in the direction necessary to take out the slack.

But the chain would slip from the indenture in the sheave wheel. This would jerk the workman.

Another of defendant's workmen, without being ordered, came and took hold of the chain at the other side of the second sprocket or sheave wheel. He did this because he saw that the two workmen in question were in need of some help.

This work was not pleasant to plaintiff and his fellow workman. They left the place to which they had been directed to go and pull the chain, and stepped to the center sprocket or sheave wheel, which was the driving force at the end of the kiln.

While at the place, plaintiff crouched down in some way not fully explained, and applied his foot to the chain, and pressed it against the sprocket.

His foot slipped, and was caught between the sprocket and the chain, causing the accident before mentioned.

The sprocket or sheave wheel was about 12 inches in diameter. It follows that the foot of plaintiff, which he pressed against the endless chain on the outer side of the wheel, was about 6 inches from the axle of the wheel. Each link of the chain was 4 inches in length according to one of the witnesses and according to another 3 inches; that is, it measured five-eighths in diameter, by about 3 inches in length.

The personnel at this work of pulling out the endless chain in its broken condition consisted of four workmen: First, the foreman, who was on the east side of the kiln, at about 50 feet from the accident. He was near to the lever, ready to turn on or to cut off the current. The next person at work here was the plaintiff, who was at the sprocket identified by No. 2, having stepped away from the spot indicated by No. 1 of the sketch annexed to No. 2, where his foot was crushed. Another workman, who is referred to in the testimony as the partner of plaintiff in the work, was standing near the plaintiff. He was asked, while being examined as a witness, why he did not place his foot where the plaintiff placed his. His answer was that he did not place his foot on the chain because he was careful and considered such an act dangerous.

This so-called partner testified that, while he and the plaintiff were pulling the endless chain with their hands, there was no great exertion in passing the loose chain along.

There was a fourth employé, J. Haggott, as before stated, who was not detailed, as before stated, to assist in taking up the slack, but who, on seeing that the so-called

partner of plaintiff, Campbell, and the plaintiff, were in need of help, because the chain might pile up, he said, around sheave No. 2, took hold of the chain of his own accord at some little distance on the other side of the sheave, which we have numbered 5, and from that place was helping in passing on the chain and keeping it as taut as possible.

It will be borne in mind that plaintiff and Campbell were keeping the slack from winding around sheave No. 2.

Plaintiff at first was at a point marked 1 and the assistant at a point marked 3.

While at this point, they were using their hands exclusively, while witness Haggott was at No. 4, doing the same kind of work. From this point they chose to leave and take up the work at the sprocket.

The wheelwright foreman, Hutton, witness for defendant, stated that at the time of the accident he was working around the kiln; the chain being broken, two of the cars could not be moved without pulling them; that plaintiff was present; he directed him to go in and pull out the chain and keep it from warping around sprocket No. 2. He stated that he went with plaintiff and Campbell and told them just what to do; that when he went over to turn on the current plaintiff and Campbell were holding the chain and pulling as he had directed them to do. On directing his attention a second time, after he had reached the lever, to the two workmen just referred to, he saw that plaintiff had left his place of work and had gone to sprocket No. 2. His order to them was to get between point indicated by letter G and No. 2; but instead of that plaintiff had moved to the sprocket, as just stated.

He says that he left his lever and had made a few steps to warn plaintiff not to thus expose himself by using his foot, as before mentioned, in pressing the chain. He, immediately after the accident turned back and shut down the current.

Another witness said that he remarked, in passing while plaintiff was at work, that if he did not act with great care he would get hurt.

There is no testimony that the plaintiff heard the remark, although made in a loud tone of voice. It is only mentioned here as evidence that those who passed the plaintiff saw that there was danger.

Another witness stated that he did not think that, where plaintiff was placed at first, much pulling was required to keep the chain tight in the sprocket.

Sometimes the chain conveyed by the sprocket would run along a few feet without slipping, and then again it would slip every two or three feet.

### Discussion and Judgment.

Conceding that it became evident to plaintiff that he could not pull the chain and operate the machine in the manner that the foreman had directed him to do, none the less it was his duty to make known to the foreman his inability to pull the chain in the manner that he (the foreman) had directed.

This could easily have been done, as the foreman was within hailing distance.

His failure to give him this information was unfortunate.

It is a rule to which employés must be held under established principles of jurisprudence. This rule has been commended in a number of decisions; also by commentators whose text generally follow decisions.

Here the requirement was particularly important.

Employés should always carry out the direction of the employer to the extent possible. Well-settled principle does not recognize in employés the right to change orders and act according to their own will.

In thus doing, plaintiff undertook to do the work in a different and dangerous manner. It was particularly hazardous. Even Campbell, who was with plaintiff, stated as a wit-

ness that plaintiff had placed himself in a dangerous position.

The duty of the servant in a case somewhat similar is clearly laid down. Crutchfield v. Railroad Co., 76 N. C. 320.

Again, it is the duty of the servant to give notice of work that cannot be performed as ordered by the foreman. Patterson v. Pittsburg, 76 Pa. 390, 18 Am. Rep. 412.

An employé, in order to maintain his suit, must prove ordinary care on his part. Buzzell v. Laconia Co., 48 Me. 113, 77 Am. Dec. 212. See, also, Toledo R. R. v. Eddy, 72 Ill. 139.

In other words, generally the employer cannot be held liable for injury caused by the negligence of the employé.

The failure to follow the foreman's order was the immediate cause of the accident. It is reasonable to presume that, if the order had been followed, plaintiff would not have been hurt.

The conclusion is inevitable.

The change of position by the plaintiff and the pressure of his foot on the chain against the wheel was the immediate cause of the unfortunate accident.

Not only the master did not give order to change the manner of the work, but he did not stand by and allow another manner of doing the work to be followed. Through the foreman, the principal was on his way to say to the plaintiff not to thus expose himself.

The sprocket wheel was in open view. The casualty happened because of plaintiff's getting within reach of the sprocket.

The employé should always carry out the directions of his employer, not in a servile or obsequious manner, but reasonably, in an open way. He should be careful and not substitute his will, particularly where there is danger in the work, and when it is attended with greater danger than there would otherwise have been.

The judgment of the district court is for plaintiff in the sum of $3,000.

Defendant appealed.

We have considered with close attention the opinion of the learned judge of the district court. The difference between his opinion and ours relates almost entirely to law, and not to facts.

We are constrained to the conclusion we have reached by the different principles experience has laid down to govern as between employer and employé.

The plaintiff has been unfortunate. None the less there can no attempt be made in justice to soothe that misfortune by decreeing damages, which would find no sanction in jurisprudence.

There is only one alternative.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided, annulled, and reversed. Plaintiff's demand is rejected, at his costs in both courts.