# Carrington *v.* Louisville & Nashville Railroad Co.

### *Action for Damages against Railroad Company, by Administrator of Person Killed.*

1. *Judgment on verdict for plaintiff; error without injury to him.*—In an action against a railroad company to recover damages for personal injuries, the plaintiff having recovered a judgment on verdict, and reserved exceptions to several rulings of the court on the trial; this court, on appeal by him, will not consider any ruling adverse to him which does not affect the question of the measure or amount of damages, since, if erroneous, it could not have injured him.

2. *Statutory duty of engineer, as to ringing bell, or blowing whistle.* Under statutory provisions now of force (Code, § 1144), the engineer of a railroad train is required to ring the bell, or blow the whistle, at intervals, "on entering into or passing through any village, town, or city ;" but, under former statutes (Code, 1876, § 1699), the duty extended only to "the corporate limits of any city or town."

3. *Trespassers on railroad track.*—Except at public crossings, and within the limits of cities, towns and villages, a railroad engineer is under no obligation to maintain a special look-out for intruders or trespassers on the track, and is only bound to the exercise of reasonable diligence after they are discovered, or their peril becomes apparent, in the absence of some special fact or reason calling for greater diligence on his part.

4. *Same.*—The fact that the train of cars was, at the time of the accident, passing near (not through) a small village, or collection of houses containing about 200 inhabitants, from which it was separated by a fence, is not a special reason calling for greater diligence towards trespassers walking on the track.

5. *"Gross negligence," as overcoming contributory negligence.*—"Gross negligence" on the part of the railroad engineer does not overcome the defense of contributory negligence, unless it is such as raises the presumption of a conscious indifference to consequences—that is, unless it is wanton, reckless, or intentional.

6. *Argumentative charge as to negligence.*—A charge instructing the jury that, if they believe from the evidence that the defendant's servants, in charge of the train at the time plaintiff's intestate was killed, "were at the time operating the train in a reckless manner, that is, without regard to consequences, they may find that the injury was produced by wanton, or reckless, or intentional negligence of defendant," is properly refused, because argumentative merely.

7. *Evidence of other permissive trespasses.*—Plaintiff's intestate having been killed while walking down defendant's railroad track, by an engine approaching from behind him, the fact that other persons in the neighborhood were in the habit of crossing the track near that place, in order to get water from a spring close by, is not relevant or admissible as evidence for the plaintiff.

8. *Same.*—Nor can the plaintiff be allowed to prove that other persons were in the habit of walking along the railroad track, at or near the place where the intestate was killed, such acquiescence not being invitation, nor showing a license to the public.

VOL. LXXXVIII.

[Carrington v. Louisville & Nashville R. R. Co.]

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by Paul S. Carrington, as administrator of the estate of his deceased son, Paul F. Carrington, to recover damages for the alleged negligence of the defendant's agents and servants, which caused his death. The deceased was killed on the 10th February, 1887, by being run over by an engine and train of cars belonging to the defendant corporation; and the action was commenced on the 15th March, 1887. The pleas were, not guilty, and contributory negligence. It was proved on the trial, as the bill of exceptions states, that the railroad train consisted of an engine, tender, caboose, and several empty cars, going from Birmingham to Warrior for a load of coal, but running backwards; that the men on it were the conductor, engineer, firemen, and several brakemen; that the deceased was walking down the railroad track, with his back to the approaching train, and was "struck and killed as he started to get off the track;" that he was "somewhat hard of hearing, but could hear the door-bell of his residence while he was in the back part of his house, and the rumble and noise of carts and wagons on the street;" that "no bell was rung by the approaching train, nor whistle blown, nor other warning given from the train, and no effort whatever was made to avoid running over and killing him." The engineer, conductor and fireman of the train each testified, that they did not see the deceased until the train struck him, and could not have seen him because the tender obstructed the view in that direction; and that they were watching for a train in their rear, which, as they had been instructed, was to follow them. "The plaintiff asked a witness, whether any part of the people living near the place where the deceased was killed, were in the daily habit of crossing the railroad track, for the purpose of getting water from the spring on the east side for domestic purposes;" to which question the court sustained an objection by defendant, and plaintiff excepted. "The plaintiff offered to prove that, before and at the time of the killing, and at and near the place of the accident, persons were in the habit of walking on the railroad track;" to which evidence the court sustained an objection, and plaintiff excepted.

The plaintiff requested the following charges in writing, and duly excepted to the refusal of each:

(1.) "If the jury believe that the plaintiff's intestate

was killed by being run over by a train of the defendant railroad company, and that his death resulted from the reckless conduct or gross negligence of the defendant's servants or agents in charge of the train; then they should find a verdict for the plaintiff, and assess the damages at such sum as they deem just."

(2.) "If the jury believe from the evidence that plaintiff's intestate was run over and killed by the defendant's cars or train, and if, when killed, he was walking on the railroad track, and, by reason of simple negligence, was not aware of the approach of the train until it was too late to escape the danger; yet, if his death was caused by the reckless conduct or gross negligence of such servants or agents, such negligence on the part of the deceased would not disentitle the plaintiff to recover damages in this case, if the persons in charge of the train made no effort to stop it, or to warn him of his danger, or to prevent the accident."

(3.) "The watchfulness required of persons in charge of, operating and managing a railroad train, is measured by the character of the country through which the road runs, being greater where the country is thickly settled with people, and less where it is open and comparatively thinly settled; and if the jury believe from the evidence that many people were living in the immediate vicinity where the intestate was killed, and that the persons in control of the train, as it approached the place of the killing, were not watchful or vigilant in keeping a look-out in the direction the train was moving, but were careless and negligent in that regard; and if the jury believe that, by due diligence, the plaintiff [intestate] could have been seen on the track in time to be warned of his danger; then the jury may find that the defendant's train was being run in a reckless manner, and may find for the plaintiff."

(4.) "If the jury believe from the evidence that the persons managing and operating the defendant's train, by which plaintiff's intestate was killed, were operating said train at the time in a reckless manner, that is, without regard to consequences, the jury may find that the injury was produced by wanton, or reckless, or intentional negligence of the defendant."

The refusal of these charges, and the rulings on evidence, are now assigned as error.

[Carrington v. Louisville & Nashville R. R. Co.]

WM. M. BROOKS, J. M. VANHOOSE, and D. H. SMITH, for appellant.

HEWITT, WALKER & PORTER, and JONES & FALKNER, *contra.*

SOMERVILLE, J.—The action is brought for the alleged negligent killing of the plaintiff's intestate, by collision with an engine of the defendant railroad company, the injury having occurred while the deceased was walking on the track, or right of way of the defendant. The verdict of the jury was in favor of the plaintiff, and his damages were assessed at the sum of five hundred dollars.

1. It is perfectly apparent, upon the whole record, that this finding of the jury necessarily determined every issue raised in favor of the plaintiff, excepting alone the issues affecting the *amount* of recovery. They manifestly decided, that the defendant was guilty of culpable negligence, for which it was liable in damages to the plaintiff. They decided likewise, that the deceased was not guilty of contributory negligence in any particular which would bar a recovery by his personal representative. The only matter as to which the plaintiff in the court below, who is the appellant here, can or does complain, is, as we have said, the *amount* of the recovery. He maintains, that the jury should have found a verdict for a larger sum than five hundred dollars. In this aspect of the record, we have a direct authority in the case of *Donovan v. South & North Ala. Railroad Co.*, 79 Ala. 429, for the proposition, that we will not consider as reversible error any ruling of the primary court bearing merely on the naked question of the defendant's liability, and not affecting the amount of damages recovered, however erroneous it may be in fact, because, if error, such ruling is error without injury to the plaintiff.

2. The accident, which is the basis of the present action, occurred on February 10th, 1887, before the present Code went into operation. As the statute then stood, the duty of an engineer to ring the bell, or blow the whistle, was expressly required only at the places enumerated in section 1699 of the Code of 1876. This section included regular depots, public road crossings, curves crossed by public roads, where the engineer could not see at least one-fourth of a mile ahead, and *incorporated* towns or cities.—Code, 1876, § 1699. The duty had not then been extended to "villages," whether incorporated or not, as in section 1144 of the Code of 1886.

Conceding that the collection of houses with their inhabitants, which are shown to be adjacent to the place of the accident, constituted a *village*, there was no statutory duty imposed on the engineer in charge of defendant's train, to ring the bell, or blow the whistle, at the place where Carrington, the deceased, was killed.

3. The deceased was a trespasser, and had no lawful right to walk on the defendant's right of way. There was, therefore, no duty devolving on the engineer to anticipate or expect such an unlawful trespass; and hence no duty existed to keep a vigilant look-out for the perpetrator, in the absence of some special fact or reason which called for diligence in this particular.—*Bentley v. Ga. Pac. Railway Co.*, 86 Ala. 484, citing *Womack's Case*, 84 Ala. 149; *Blanton's Case, Ib.* 154; *Donovan's Case, Ib.* 141. As forcibly said by Strong, J. in *Phila. & Reading R. R. Co. v. Hummell*, 44 Penn. St. 375; 84 Amer. Dec. 457, "there is as perfect a duty to guard against accidental injury to a night intruder into one's bed-chamber, as there is to look out for trespassers upon a railroad where the public has no right to be." The sooner this salutary principle is understood by the public, the greater will be the security of human life, and the fewer will be the number of deaths from reckless exposures of person to the perilous danger of walking on railroad tracks in the presence of moving engines, of which one now reads every day in the public press.

4. The third charge requested by the plaintiff, in effect, assumes that, "if *many* people lived in the immediate vicinity where Carrington was killed," this would constitute a special reason calling for the duty of keeping a vigilant look-out for trespassers. This hypothesis is rather indefinite, especially in view of the fact that the railroad track was not in a street of the alleged village, the adjacent houses being fenced off from the track, and there was no evidence tending to show that the track was used generally by the people in the vicinage, or even to such extent as to charge the defendant with notice of any probability of encountering a trespasser at or near the point of accident. The charge was properly refused, independently of the fact that it relates only to the question of defendant's liability, and not the measure of plaintiff's damage.

5. The second and third charges assert, in substance, that the decedent's want of ordinary care—or, in other words, his contributory negligence—would be overcome by the "gross

[Carrington v. Louisville & Nashville R. R. Co.]

negligence" of the defendant, without regard to its nature as evidencing the presumption of a conscious indifference to consequences. "Gross negligence," generically speaking, would not be sufficient to overcome contributory negligence of plaintiff's intestate, unless it was negligence to a degree that was wanton, reckless, or intentional. We have many times so declared the rule.—*Bentley's Case*, 86 Ala. 484; *Womack's Case*, 84 Ala. 141; *Cook's Case*, 67 Ala. 553; *Frazer's Case*, 81 Ala. 200; *Blanton's Case*, 84 Ala. 155. Even the analogous principle, which authorizes the recovery of exemplary damages, does so only when the negligence is so gross as to raise the presumption of a conscious indifference to consequences.—*Leinkauff v. Morris*, 66 Ala. 406; *Western Union Tel. Co. v. Way*, 83 Ala. 542.

6. The fourth charge, asserting that the jury "may find" a certain conclusion from the state of facts hypothesized, was merely an argument, and announced no proposition of law. It was properly refused.—*Hussey's Case*, 86 Ala. 34; *Snider v. Burks*, 84 Ala. 53.

7. The court properly refused to admit the evidence tending to prove that persons in the neighborhood were accustomed to cross the track by a foot-path, a hundred yards or so distant from the place of the accident, in order to get water from a spring on the East side. The decedent was not crossing at this path for any such purpose, but was walking up the track laterally, or longitudinally. Hence, an alleged implied license given to others to cross the path to obtain water, would be irrelevant to prove a license to use the track for pedestrian purposes generally.

8. Nor did the court err in refusing to allow the plaintiff to prove that other persons were in the habit of walking along the track, at or near the place where Carrington was killed. We so held in *Womack's Case*, 84 Ala. 149. The evidence does not tend to show a voluntary license from the railroad company for the public to use its track as a highway for pedestrians, mere acquiescence not being invitation.—*Louisville, &c., Railway Co. v. Phillips*, 112 Ind. 59; 2 Amer. St. Rep. 155, 161; *Pratt Coal & Iron Co. v. Davis*, 79 Ala. 308.

We find no error in the record, and the judgment is affirmed.