# Neyman as Admr. *v.* Alabama G. S. R. R. Co.

## *Death of Trespasser.*

(Decided June 1, 1911.   55 South. 509.)

1. *Appeal and Error; Harmless Error; Pleadings.*—Where the verdict was for the plaintiff and none of the rulings on the pleadings, or otherwise, affected the measure of damages or the amount of the jury's verdict, any error committed in such rulings was harmless.

2. *Carriers; Passengers; Relation; Fraud.*—Where the intestate at the time of his injury, was riding on the train by permission from the conductor obtained by falsely representing that he was riding on an employee's pass, he was a trespasser and not a passenger, and the carrier owed him no duty except not to injure him willfully or wantonly.

3. *Railroads; Injury to Trespasser; Complaint.*—A count alleging that the defendant's servants, knowing that the decedent was in or on the caboose, wantonly, willfully or intentionally, ran an engine upon or against the caboose, thereby wantonly, willfully, or intentionally causing decedent's death, meant no more than that defendant's agent, or other servant ran his engine against the caboose, and although the operation may have been proper, and carefully performed, and the impact itself usual and necessary, the conclusion is expressed that by the act its agents or other servants, wantonly, willfully or intentionally killed the deceased; hence the count was not sufficient to allege wanton or willful negligence as the inferential cause could not aid the general averment preceding, and was not sustained by that averment.

4. *Same.*—The count alleging that defendant's employees or servants in charge of the train in question, "while operating said train," wantonly or willfully ran defendant's engine or cars on or against intestate, sufficiently charged that the agents or servants were acting in the line of their duty at the time of the accident.

5. *Same; Wanton Injury.*—The facts stated, and it is held, that in the absence of proof that the fireman knew that the decedent was in the caboose, or had good reason to believe he was there, and that the local train had broken in two when he was signalled to give slack, there was no proof of willful injury sufficient to render the carrier liable for decedent's death.

APPEAL from Bessemer City Court.

Heard before Hon. WM. JACKSON.

Action by Ben H. Neyman, as Administrator, of the estate of B. F. Neyman against the Alabama Great

[Neyman as Admr. v. Alabama G. S. R. R. Co.]

Southern Railway Company for damages for the death
of his intestate. There was judgment for plaintiff, and
the court on motion of defendant set the judgment and
verdict aside, and plaintiff appeals. Affirmed.

PINKNEY SCOTT, for appellant. Counsel discuss the
original action of the court on the pleading, but in view
of the opinion it is not deemed necessary to here set
them out. He insists that under the evidence the in-
jury was wantonly inflicted, and that the court erred
in granting a new trial because of certain charges re-
fused.—*M. & C. R. R. Co. v. Martin,* 117 Ala. 367; *M. J.
& K. C. R. R. Co. v. Smith,* 153 Ala. 133.

A. G. & E. D. SMITH, for appellee. Under the
facts in this case the plaintiff's intestate was a tres-
passer and not a passenger.—107 Ind. 442; 64 Mo. 536;
85 Ill. 80; 64 Minn. 168; 91 Tenn. 428; 7 A. & E. R. R.
Cases, 586 and note. Count 4 did not charge willful or
wanton negligence.—*L. & N. R. R. Co. v. Anchors,* 114
Ala. 492; *Duncan v. St. L. & S. F. R. R. Co.,* 44 South.
418; *L. & N. v. Mitchell,* 134 Ala. 261; *L. & N. R. R. Co.
v. Brown,* 121 Ala. 221. The court properly granted a
new trial.—*Broyles v. Cen. of Ga. Ry. Co.,* 52 South. 81.

SOMERVILLE, J.—In the lower court the plaintiff
(appellant) recovered a judgment against the defendant
(appellee) for $3,000 for wrongfully causing the death
of B. F. Neyman, and on motion of the defendant the
court set aside the verdict of the jury and granted a
new trial. From this action of the trial court plaintiff
prosecutes this appeal, and assigns error thereon.

It does not appear upon what ground or grounds the
motion for a new trial was sustained, but the grounds
relied on included alleged errors of the court in over-
ruling defendant's demurrers to counts 4 and 12 of the

complaint, and in declining to give the general affirmative charge for the defendant, as well as the failure of the verdict to respond to the law and the evidence. The trial was had on counts 1, 3, 4, and 12 of the complaint. Counts 1 and 3 declare on simple negligence resulting in the death of plaintiff's intestate, alleging that he was a passenger when killed; while counts 4 and 12 are for willful, wanton, or intentional killing, without averring that deceased was a passenger.

The record shows the following material facts as to which there is no conflict in the evidence: The deceased was riding on defendant's local freight train, on which he had secured passage by material false representations to the conductor as to a pass on which he claimed to be riding. This train was proceeding towards Birmingham, the deceased riding in the caboose at the rear end of the train. Following behind this local, and going in the same direction, was an "extra" freight train, which was pulled by a reversed engine. At the point of the accident the engine of the local had broken down on one side, and the train had been halted and delayed thereby. During this delay the extra train came up and was halted, and its engineer, leaving his own engine in charge of his fireman, one Ed Stanton, went ahead to the disabled engine to assist in getting it started off. After it had been repaired, it was necessary to push it off in starting, and on a signal to Ed Stanton he brought the extra up, engine and all, for that purpose. It was not necessary to couple the extra engine onto the caboose of the local in order to push it off, but George Storey, a brakeman, without instructions from any one, so arranged the coupling apparatus that, when the engine struck the caboose, it coupled on, which Stanton could not see on account of the tank of his engine being in front of it. After the pushing off

was accomplished, he checked the movement of his engine, and then discovered that it was coupled to the caboose. Presumably the resulting pull back broke the local train in two, as it was in fact broken several cars ahead of the caboose. Stanton then received a signal to "give slack," so that his engine could be uncoupled. The cars of the local were equipped with air brakes, which operated automatically upon the breaking off of these cars, in railroad parlance, throwing the cars "in emergency," and holding them securely. Stanton obeyed the signal to give slack by moving his train forward, and, pushing against the cars thus set fast "in emergency," these cars gave way under the heavy pressure and crumpled in from the ends, thereby killing plaintiff's intestate in the caboose. As soon as Stanton observed what was happening, he stopped his train as quickly as he could. Stanton did not know that his engine had been coupled onto the caboose, he did not know that the "local" train had broken in two, and he did not know, nor have any reason to believe, that the deceased or any one else was in the caboose during the operations above narrated.

1. Appellant assigns for error a great number of rulings made by the trial court on the original trial. As none of these affect the measure of damages, nor the amount of the jury's verdict, which was in favor of plaintiff, it is manifest that, even if erroneous and properly assigned on this appeal, they were not prejudicial to plaintiff.

2. Plaintiff's intestate by falsely representing to the conductor of the local freight train that he was riding on an employee's pass, and thereby fraudulently securing free transportation, became a trespasser instead of a passenger, and on well-settled principles of law the defendant carrier could be liable to him only for

39—172

willful or wanton injury.—*Broyles v. C. of G. Ry. Co.,* 166 Ala. 616, 52 South. 81; *Fitzmaurice v. New York, etc., R. Co.,* 192 Mass. 159, 78 N. E. 418, 6 L. R. A. (N. S.) 1146, 116 Am. St. Rep. 236, 7 Ann. Cas. 586, and note, 587, collecting all the cases; note to *Ill. Cen. R. Co. v. O'Keefe,* 61 Am. St. Rep. 104; 6 Cyc. 538.

3. Count 4 of the complaint charges that the defendant's agents, knowing plaintiff's intestate was in or upon said caboose, "wantonly, willfully, or intentionally ran said engine upon or against said caboose, * * * thereby wantonly, willfully, or intentionally causing the death of plaintiff's intestate." Manifestly the whole count, when dissected, means no more than this: The defendant's engineer or other servant intentionally ran his engine up to and against the caboose of the forward train (whether gently or forcibly, recklessly, or carefully, or with what intent, does not appear); and although the operation may have been proper and carefully performed, and though the impact may have been gentle, and the act itself usual and necessary, the pleader infers, and states as his conclusion, that by it said engineer or other servant wantonly or intentionally killed the intestate. The language of the count does not sufficiently charge wanton negligence or willful injury; since the inferential clause at the end cannot aid the general averment preceding, nor is the conclusion supported by that averment. The specific case has been decided by this court in *B. R. L. & P. Co. v. Brown,* 150 Ala. 327, 43 South. 342. The defendant's demurrers to count 4 aptly pointed out this defect, and should have been sustained. The fourth ground of defendant's motion was therefore well taken.

4. Count 12 of the complaint avers that the agents or servants of defendant who were in charge or control of the trains in question "while operating said trains" wantonly or willfully ran defendant's engine or cars

upon or against the intestate. This language sufficiently shows that these agents or servants were acting within the line of their duty as such, and the demurrer grounded on the supposed deficiency of the count in this respect was properly overruled.

5. On the theory correctly conceived that plaintiff's intestate was a trespasser on defendant's train, and not a passenger as alleged in counts 1 and 3, the trial court rightly instructed the jury that they could not find for the plaintiff on those counts. On the issues made under the remaining counts 4 and 12, charging wanton or willful injury, the jury were instructed by charge E, given at the instance of defendant, that they could not find for plaintiff if they believed from all the evidence that Ed Stanton, the fireman in charge of the extra engine, did not know at the time of intestate's death that train No. 96 (the local) had been broken in two and disconnected, and that the caboose and the several cars with it had been thrown into emergency, and by charge F, also given for defendant, the jury were instructed that they could not find for plaintiff if they believed from all the evidence that said Stanton at that time did not know that the tender of his engine had been coupled onto the caboose of the local.

The burden of proof being on the plaintiff to show that the defendant wantonly or willfully killed his intestate, plaintiff was bound to offer evidence from which wantonness or willfulness could at least be inferred. The operation resulting in the death of the intestate was in itself ordinary and proper; and if it be conceded that it was not executed in the safest and most prudent manner, and that somebody blundered (as indeed must have been the case), there is still absolutely no foundation for the inference required, unless the evidence discloses knowledge by a responsible agent (and in this case it could only have been the fireman Stan-

ton) of the existence of the essential conditions which alone could have by co-operation produced the tragic result; for it is certain that the caboose would not have been wrecked or injured had not the "local" train been broken in two and set fast "in emergency" by the air brakes, and equally certain, we think, that the break would not have occurred had not the "extra" engine been coupled onto the caboose, and there is nothing in the evidence from which knowledge of either of these conditions could be imputed to Stanton who was pushing the caboose with his engine. But, had he known of both of these conditions, unless he also knew of the intestate's presence in the ill-fated caboose, or had good reason to believe he was there, wanton or willful injury could not be inferred from his conduct. There is no evidence of any such knowledge on the part of Stanton. Charges E and F correctly stated the law, and, as the undisputed evidence stood on the issues specialized, the jury could only have found a verdict for plaintiff by disregarding either the law or the evidence. For this reason the trial court properly granted a new trial on grounds 1, 2, 9, 10, and 11 of defendant's motion.

6. It is but a corollary to what we have already said that on the whole law and evidence the trial court should have given the general affirmative charge for the defendant, and that it erred in leaving to the jury essential issues of fact as to which there was no conflict in the evidence. The sixth ground of defendant's motion was therefore well taken.

The judgment of the trial court in granting defendant's motion for a new trial was without error, and must be affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.