156 So. 773

## MILLER v. THOMASON.

8 Div. 499.

Supreme Court of Alabama.

Oct. 4, 1934.

W. T. Murphree, of Gadsden, for appellant.

J. A. Lusk, of Guntersville, for appellee.

BROWN, Justice.

This appeal is by the plaintiff from a judgment in his favor, and rulings of the court not affecting the amount of the recovery, though erroneous, cannot avail to reverse the judgment. The action is assumpsit on the common count for merchandise, goods, and chattels, sold by the plaintiff to the defendant on the 24th day of March, 1931, and the amount claimed was $3,000.

The pleas were the general issue, and recoupment claiming damages for the breach of a condition of an alleged contract entered into by the parties on the 23d of March 1931, in which the plaintiff agreed to furnish to the defendant "all the fertilizer that he desires to sell at Albertville, these goods to be any and all grades A. D. Adair & McCarty Brothers manufacture at their plants in Atlanta, Georgia, and Chattanooga, Tennessee. * * * The party of the first part (plaintiff) also guarantees the price to be as low as the following named companies sell like goods in Albertville at any time during the season of 1931, to-wit: Virginia Chemical Company, International Agricultural Company, F. S. Royster, Armour and Company and American Agricultural Corporation."

The pleas of recoupment claim $10,000 as damages, and allege as a breach of the contract, the failure or refusal of the plaintiff to sell and deliver to him 1,000 tons of fertilizer ordered by him under said alleged contract, at the "guaranteed price."

The trial was by the court without the intervention of a jury, and judgment was entered for the plaintiff for $1,500.

The plaintiff's evidence goes to show that part of the fertilizers, the basis of the account sued on, were ordered by the defendant on the 21st of March, 1931, before the alleged contract was entered into. But the invoices furnished by the plaintiff to the defendant, at the time of the delivery of the goods, specifying the price of each class in the lot of fertilizer in the shipment, embodied the statement: "Terms: Contract with R. L. Miller Subject to cash discount of 18% For Prompt Remittance." The dates of these several invoices were March 24, 1931, the day after the contract was signed, and the aggregate price of the goods as shown by said invoices and plaintiff's evidence was $2,981.50, and plaintiff testified that this was the reasonable market price of the fertilizer at the time of the delivery.

The defendant admitted that he bought and received the 100 tons of fertilizer and the original invoices, and testified: "The price broke to $19.00 for the character of stuff. I bought from plaintiff. He agreed to sell it to me at $19.00, with 8% per annum interest from May to October, and agreed to pay warehouse charges of 65 cents per ton. After I talked with him in my office about it he declined to ship me any more. We discussed it quite a while and never came to any agreement. He told me to use the goods I had and he would make a satisfactory settlement with me. The next conversation he came to me for a settlement and asked me what I wanted to do. I told him I did not feel I owed him any-

For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

thing. I thought I was damaged as much as the fertilizer was worth by his not shipping the goods."

The defendant adduced the testimony of several witnesses, dealers in such fertilizers, showing a slump in the prices of fertilizers sold by the manufacturers named in the alleged contract during the season of 1931. This testimony was admitted over the timely objection of the plaintiff.

■ Under the terms of the alleged contract, the defendant was not obligated to order, purchase, or receive any amount of fertilizer from the plaintiff. This feature of the contract was left solely to the desire and will of the defendant, and was wanting in mutuality of obligation, and will not support an action for its breach, or for a breach of any warranty embodied therein, by the party not bound thereby. Cosby-Hodges Milling Co. v. Riley, 227 Ala. 347, 149 So. 612, and authorities cited therein; Pizitz-Smolian Co-op. Stores v. Meeks et al., 224 Ala. 330, 140 So. 442; McGowin Lumber & Export Co. v. R. J. & B. F. Camp Lumber Co., 192 Ala. 35, 68 So. 263; Perfection Mattress & Spring Co. v. Dupree, 216 Ala. 303, 113 So. 74; McCormick v. Tissier, 222 Ala. 422, 133 So. 22.

■ The fact that the defendant, after a slump in the market price of fertilizers, ordered a definite quantity of such fertilizers, which plaintiff declined to sell, did not constitute such performance of the contract as supplied the element of mutuality. The contract being void ab initio, the plaintiff had the right to disregard it and refuse the shipment.

■ This does not impinge the well-settled principle, that in so far as the unilateral obligation is performed, it becomes a binding obligation. In such a case the performance supplies the element of mutuality necessary as a consideration to support the obligation. Evans v. Cincinnati, Selma & Mobile Railway Company, 78 Ala. 341; Pullman Co. v. Meyer, 195 Ala. 397, 70 So. 763; Jones v. Lanier, 198 Ala. 363-367, 73 So. 535; Louis Werner Sawmill Co. v. Vinson & Bolton, 220 Ala. 210, 124 So. 420.

If the contract had fixed a price, instead of merely guaranteeing "the price to be as low as the following named companies sell like goods in Albertville at any time during the season of 1931, to-wit" (naming them), the price so fixed, on the principle last above stated, would have controlled, and evidence thereof would have been admissible under the general issue. But, in the absence of a fixed price, the defendant would be forced to resort to a cross-action for breach of the warranty, and the warranty falls with the unilateral undertaking.

■■■ The result is that the plaintiff was entitled to recover quantum valebant for the goods sold and delivered, and the evidence offered by the defendant going to show the goods were purchasable at less price during the season was improperly admitted.

The evidence is without dispute that the reasonable cash market value of the goods was $2,980.50 less 18%, $2,504, with interest for three years and one month, total $3,121.

The judgment for the plaintiff appellant is therefore corrected, fixing the amount of his damages at the sum of $3,121; the appellee to pay the costs of the suit and the costs of this appeal.

Corrected and affirmed.

ANDERSON, C. J., and THOMAS and KNIGHT, JJ., concur.