10 So.2d 150

**SEITZ v. HEEP.**

8 Div. 194.

Supreme Court of Alabama.

Oct. 8, 1942.

See, also, ante, p. 372, 10 So.2d 148.

Chas. H. Eyster and J. W. Patton, Jr., both of Decatur, for appellant.

Coleman, Spain, Stewart & Davies and Frank M. Young, all of Birmingham, and Harris & Harris, of Decatur, for appellee.

FOSTER, Justice.

This is an action by appellant for personal injuries resulting from an automobile accident, which occurred in Alabama on September 26, 1939. Both plaintiff and defendant were non-residents of Alabama, passing through the State, and had a head-on collision. Plaintiff's husband was driving one car and defendant the other.

The evidence is without conflict that plaintiff's left arm above the elbow had a complete simple transverse fracture, her lower lip was cut through the gum to the bone, contusions over the head and chest, her ankle was swollen and bruised, and a lot of superficial bruises of no particular seriousness. Plaintiff was carried at once to a hospital in Decatur and placed under the care of a doctor who sutured the lip and gum wound, reduced the fracture of the arm, and put it in a splint and later in a cast.

The radial nerve in the arm was afterwards found to be severed. This sometimes occurs in the reduction of a fracture. It controls to some extent the use of the arm, and she partially lost control of the wrist causing it to "drop." She was under the care of a Decatur doctor about ten to fifteen days, when she left and went to her home in Racine, Wisconsin. She was about fifty-seven or eight years of age. At Racine she was under the care of a doctor until September, 1940, when she went to Milwaukee, Wisconsin, and was under the treatment of Dr. Schumm, a specialist in orthopedic surgery. The fracture had not united at the time she went to Dr. Schumm in Milwaukee. A Lane plate was put on the fracture at Racine where it remained some time without union of the bone. The doctor at Racine did this and removed it, treating her from October 17, 1939, to September 1940. During this time she had a "wrist drop" caused by the dissolution of the radial nerve. She spent much time in the hospital at Racine on two occasions for the Lane plate operation and its removal before going to Milwaukee. She was also treated in Racine by a masseur. When she went to Milwaukee, the bone still was not united. Dr. Schumm sutured the torn ends of the radial nerve, and did a bone graft to secure union of the fractured arm bone. This he explained as follows: "The ends of the two fragments of the lower end of the radius (?) (humerus) were freed from the fibrous tissue, that was uniting them, and the extreme ends of the bone, which were quite hard and bloodless, were removed, until bleeding bone was seen. The ends of the bone were then brought together and this required the removal of approximately one-half inch of the end of the two fragments, of each of the two fragments. The bone was brought together and an intramedullary bone peg, approximately two and one-half inches in length, was then inserted into the medullary cavity. The upper and lower fragments of the shaft, were then roughened, on their lateral aspects, by means of a chisel; a three and one-half inch full thickness tibial graft was then removed from the medial surface of the left tibia, and this graft was placed across the fracture line, approximately one and one-third inches of the graft being placed on the upper fragment, and the same amount on the lower fragment. This graft was held in place by means of four vitallium screws, with two screws attached to the upper fragment, and two screws to the lower fragment. The radial nerve was then found, and the distal three inches of the upper portion of the nerve, and the proximal two and one-half inches of the lower portion of the nerve were then freed from the surrounding scar tissue, and the ends of the nerve were resected, until the healthy

fibers, nerve fibers, were seen and the ends of the nerve were then sutured together with fine silk suture. The wound was then closed and a plaster shoulder spica was applied." He stated that she was very ill for twenty-four hours following this operation, after which she made satisfactory progress. She was in the hospital there for eight days after the operation (September 6 to 14, 1940) under his treatment, and after leaving the hospital until January 31, 1941.

The trial was had February 21 to 24, 1941. The x-ray disclosed a firm union, and that the fracture was completely healed. This was over a year after the accident. At the time of the trial, there was evidence that she had a definite disability with limitation of motion of her elbow and a lack of functioning of her left hand. But to what extent this would be permanent was not known.

She is a housewife and was prevented by her injuries from doing much of her household duties. She has suffered much pain, especially from her nerves, neuritis, from the operations and their treatment and shock. In the opinion of the doctors there will probably be a certain amount of permanent disability, but it is impossible to estimate the extent of it, and it is due more to the injury to the radial nerve than to the bone fracture. The doctor testified that if the suture of the nerve turns out to be successful, the wrist "drop" will not be permanent; otherwise it will be. She will still need to be under the care of a physician for several months after the trial of the case.

There was a verdict for plaintiff for $1,000. A motion for a new trial by plaintiff was overruled. She appeals and makes only one contention, and that is that the verdict was so inadequate as that the judgment should be set aside and a new trial ordered. She made no claim for expenses incurred or paid. No other question is presented on this appeal. There are no cross-assignments of error.

We have had occasion often to discuss the principles which control the court in reviewing a trial court in respect to the amount of a verdict for personal injuries, and it is not necessary to repeat what has been said in that connection. See Kraas v. American Bakeries Co., 231 Ala. 278, 164 So. 565; Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447; Veitch v. Southern R. Co., 220 Ala. 436, 126 So. 845; Alabama G. S. R. Co. v. Randle, 215 Ala. 535, 112 So. 112; Jackson v. Roddy, 224 Ala. 132, 139 So. 354.

■ The verdict on this trial is conclusive for the purposes of this appeal that appellee at least negligently caused plaintiff's injuries. The suit was tried on counts claiming simple negligence also wantonness. Both claims were submitted to the jury. The verdict was general, specifying no count or contention.

■ ■ We will presume therefore on plaintiff's appeal that it was on the simple negligence charge for which compensatory damages only were subject to recovery. Bradley v. Walker, 207 Ala. 701, 93 So. 634; Louisville & N. R. Co. v. Markee, 103 Ala. 160, 15 So. 511, 49 Am.St.Rep. 21; Porter Coal Co. v. Davis, 231 Ala. 359 (7), 165 So. 93. The jury should not take into consideration in thus fixing adequate compensation the fact that plaintiff's husband might also have been negligent contributing to her injuries in driving the car in which she was riding. There is nothing to show that his negligence was imputable to her. If it concurred with that of defendant in causing her injuries, both he and the defendant may be liable in damages in separate actions, in either of which there may be a recovery for full compensation. (Not now considering our guest statute. Code of 1940, Title 36, § 95.) Brooks v. City of Birmingham, 239 Ala. 172, 194 So. 525; Griffin v. Bozeman, 234 Ala. 136, 173 So. 857; Penton v. Penton, 223 Ala. 282, 135 So. 481.

An incident of the trial shows that the jury were uncertain of the effect on the right to recover if plaintiff's husband was concurrently negligent. And when the court instructed them that it had no effect they should not have allowed such thought to influence the fixation of the amount of the recovery, if it did.

Counsel for appellee also argue in brief that the jury may have been influenced by the unsatisfactory medical treatment given plaintiff in Racine, pointing out that the doctor there "tried for a period of a year to get results, when a specialist steps in and gets results in less than thirty days."

■ But if the jury gave consideration to such a theory and were thereby in-

fluenced to mitigate the damages, they did so in violation of the plain rules of law in that connection, since there was no claim of negligence in selecting the doctor. O'Quinn v. Alston, 213 Ala. 346, 104 So. 653, 39 A.L.R. 1263; Nall v. Alabama Utilities Co., 224 Ala. 33, 138 So. 411; Atlantic Pacific Stages, Inc., v. Yandle, 224 Ala. 481, 140 So. 603.

■ From the argument of counsel and the incident in court of the jury asking for certain instructions, to which we have referred, and the small amount of the verdict compared with the injuries sustained, lead us to believe that the jury must have given some influence to an idea that plaintiff's husband was also concurrently negligent contributing to plaintiff's injuries, or that her treatment in Racine by the doctor was negligent or unskillful, or that both those theories had weight with them.

They should not have considered either such theory in fixing the amount of the damages. We think therefore that the motion for a new trial on account of the inadequacy of the amount of the verdict is well supported by the reasonable inferences incident to the trial, and for that reason the motion for a new trial is granted, and the judgment is reversed and the cause remanded for another trial.

Reversed and remanded.

GARDNER, C. J., and BOULDIN and LIVINGSTON, JJ., concur.