52 So.2d 190

**AUSTIN v. TENNESSEE BISCUIT CO. et al.**

**6 Div. 150.**

Supreme Court of Alabama.

March 29, 1951.

Rehearing Denied May 10, 1951.

D. G. Ewing and T. Eric Embry, of Birmingham, for appellant.

576

Sadler & Sadler, of Birmingham, for appellees.

LAWSON, Justice.

This is a suit by Thelma McGinty Austin against the Tennessee Biscuit Company, a corporation, and James Otis Edwards to recover damages for injuries to the person of plaintiff and damage to her automobile resulting from a collision of the automobile driven by plaintiff and a truck owned by the corporate defendant and driven by the defendant James Otis Edwards.

The cause went to the jury on two counts, one charging simple negligence and the other wantonness. The defendants pleaded the general issue in short by consent in the usual form. There was a jury verdict for the plaintiff against both defendants, wherein plaintiff's damages were assessed at $1,875. Judgment was in accord with the verdict. Plaintiff filed a motion for a new trial, which was overruled. The appeal to this court is by the plaintiff, Thelma McGinty Austin.

It is settled by a long line of cases that on an appeal by the plaintiff from a judgment in his favor, we will not consider as revisable error any ruling of the trial court bearing merely on the naked question of defendant's liability, and not affecting the amount of the damages recovered, however erroneous it may be in fact, because, if error, such ruling is error without injury to the plaintiff. Donovan v. South & North A. R. Co., 79 Ala. 429; Carrington v. Louisville & N. R. Co., 88 Ala. 472, 6 So. 910; Glass v. Memphis & Charleston R. Co., 94 Ala. 581, 10 So. 215; Meighan v. Birmingham Terminal Co., 165 Ala. 591, 51 So. 775; Randle v. Birmingham R., L. & P. Co., 169 Ala. 314, 53 So. 918; Neyman v. Alabama G. S. R. Co., 172 Ala. 606, 55 So. 509; Fike v. Stratton, 174 Ala. 541, 56 So. 929; Morris v. Bragan, 195 Ala. 372, 70 So. 717; State v. Montgomery Savings Bank, 199 Ala. 365, 74 So. 942; Jones v. Woodward Iron Co., 203 Ala. 66, 82 So. 26; Holloway v. Henderson Lumber Co., 203 Ala. 246, 82 So. 344; Franklin v. Argyro, 211 Ala. 506, 100 So. 811; O'Quinn v. Alston, 213 Ala. 346, 104 So. 653, 39 A.L.R. 1263; Vance v. Myers, 213 Ala. 660, 106 So. 142; Davis v. Erwin, 214 Ala. 341, 107 So. 903; Cocke v. Edwards, 215 Ala. 8, 108 So. 857; Lowery v. Jones, 219 Ala. 201, 121 So. 704, 64 A.L.R. 553; Pounds v. General Motors Acceptance Corp., 220 Ala. 145, 124 So. 204; Beatty v. McMillan, 226 Ala.

405, 147 So. 180; Miller v. Thomason, 229 Ala. 267, 156 So. 773; Caudle v. Sears, Roebuck & Co., 236 Ala. 37, 182 So. 461; Sturdivant v. Crawford, 240 Ala. 383, 199 So. 537. To like effect are the following decisions of the Court of Appeals: Huffstutler v. Chandler Transfer & Freight Line, 33 Ala.App. 182, 31 So.2d 302; Sims v. Warren, 32 Ala.App. 516, 27 So.2d 801, certiorari denied, 248 Ala. 391, 27 So.2d 803; Tennessee Coal, Iron & R. Co. v. Dunlap, 24 Ala.App. 515, 137 So. 320; Odum v. Coldwell, 21 Ala.App. 74, 105 So. 398; Jones v. Spradlin, 18 Ala.App. 29, 88 So. 373; Patt v. Welsch, 18 Ala.App. 82, 89 So. 94.

Under this rule we pretermit any consideration of assignments of error 3, 4, 5, 10, and 11. All these assignments deal with the action of the trial court on matters relating to the legal liability of the defendants to the plaintiff. None of these assignments relate to the rules of law governing the proper measure of plaintiff's damages in the event of a recovery by her.

Assignments of error 1 and 2 relate to the action of the trial court in giving written charges C and B at the request of the defendants. It is argued, in effect, that the rule above alluded to has no application for the reason that these charges had the effect of eliminating from the jury's consideration the charge of wantonness as contained in the second count of the complaint, and thereby deprived plaintiff of the recovery of punitive damages.

We have considered the action of the trial court in giving these instructions without regard to the rule heretofore stated, and find no reversible error.

It is not reversible error either to give or refuse charges such as C and B given on behalf of defendants. In Vessel v. Seaboard Air Line R. Co., 182 Ala. 589, 591, 62 So. 180, 181, the trial court gave at the request of the defendant the following charges: "(1) The court charges the jury that wantonness is the moral equivalent of intention. (2) The court charges the jury that a wanton wrong is the moral and legal equivalent of an intentional wrong." There

was verdict for the defendant and on appeal to this court the plaintiff complained of the giving of those charges. We held the trial court did not err to a reversal in giving such charges, although they might be said to be misleading.

In Grauer v. Alabama Great Southern R. Co., 209 Ala. 568, 573, 96 So. 915, 919, it was said: "Another group of charges (V and HH) instructed the jury that wanton injury, as here charged, is the legal equivalent of an intentional injury; that is, of intentionally killing or injuring some person on that occasion, or of intentionally allowing him to be killed. This, of course, does not mean that it must have been an actual intention to kill. Charges like these have been held as not erroneous, though possibly misleading, in Vessel v. S[eaboard] A[ir] L[ine] Ry. Co., 182 Ala. 589, 62 So. 180, citing the cases which support the proposition stated. In the instant case, the general instructions given to the jury could have left no doubt in their minds, as to the true elements of wanton injury."

Neither the opinion nor the report of the case sets out charges V and HH, which were held to have been given without error in Grauer v. Alabama Great Southern R. Co., supra. However, we have gone to the original transcript in that case and find that those charges read as follows:

"Charge V: Before you can find that the plaintiff's intestate's death was wantonly caused, as charged in the fifth count of the complaint, the burden of proof is on the plaintiff to reasonably satisfy you from the evidence that some servant, agent or employee of the defendant intentionally caused or intentionally allowed the train to strike him on that occasion, or that such agent, servant or employee was guilty of such recklessness as amounted to the legal equivalent of an intention to injure or kill some person on that occasion."

"Charge HH: The court charges the jury that when the plaintiff charged in the fifth count of his complaint that his intestate's death was wrongfully and wantonly caused on the occasion complained of, this is the legal equivalent of charging that some servant, agent or employee of the

defendant intentionally caused or intentionally allowed the deceased to be killed on said occasion."

On the other hand, in Alabama Great Southern Ry. Co. v. Ensley Transfer & Supply Co., 211 Ala. 298, 100 So. 342, 344, we held that the trial court did not err in refusing to give at the defendant's request the following written charge: "(C) Before you can find that defendant's engineer wantonly damaged the plaintiff's truck, you must be reasonably satisfied from the evidence that said engineer was guilty of such conduct as was equivalent to intentionally damaging said truck." In upholding the action of the trial court in refusing charge C, it was said:

"Refused Charge C is faulty in its misleading predicate that the wanton injury charged must be equivalent to intentional injury. Vessel v. S[eaboard] A[ir] L[ine] Ry. Co., 182 Ala. 589, 594, 62 So. 180.

" 'Wanton injury' is the legal and moral equivalent of 'intentional injury,' but their elements are different, and proof of the one would not suffice for proof of the other." 211 Ala. 301, 100 So. 345.

It is to be noted that the case of Vessel v. Seaboard A. L. R. Co., supra, was cited as authority for the holding of the court that the refusal of the charges was not reversible error. As before pointed out, in the Vessel case, supra, this court held that the giving of such charges was not reversible error although they are subject to the vice of being misleading. Hence, they can be refused without error.

We come now to consider the several assignments of error which are to the effect that the trial court erred in refusing to grant a new trial to plaintiff on the ground that the amount of damages awarded plaintiff by the verdict of the jury is inadequate.

 The verdict of the jury is conclusive for the purposes of this appeal that defendant at least negligently caused injury to plaintiff and damage to her automobile. As before indicated, the cause went to the jury on two counts, the first charging simple negligence and the second charging wantonness. The verdict was general, specifying no count or counts. We will presume, therefore, on plaintiff's appeal that it was on the simple negligence charge for which compensatory damages only were subject to recovery. Seitz v. Heep, 243 Ala. 376, 10 So.2d 150. But without indulging in such presumption, our consideration of the question would be limited to compensatory damages, for although under count 2 the jury could have awarded plaintiff punitive as well as compensatory damages, still the assessment of punitive damages in any sum in a case of this kind is a matter within the sound discretion of the jury. Birmingham Electric Co. v. Shephard, 215 Ala. 316, 110 So. 604. Punitive damages are not recoverable as a matter of right, but the imposition of such damages is discretionary with the jury. Blackmon v. Gilmer, 221 Ala. 554, 130 So. 192; Sovereign Camp, W. O. W., v. Roland, 232 Ala. 541, 168 So. 576. The discretion is a legal and sound one, not to be exercised arbitrarily. Cox v. Birmingham Ry. Light & Power Co., 163 Ala. 170, 50 So. 975; Meighan v. Birmingham Terminal Co., supra. Under the evidence in this case, although the jury may have found the defendant guilty of wantonness as charged in count 2, we cannot say that a failure of the jury to award punitive damages was an arbitrary act.

 Under the pleadings and evidence in this case, the plaintiff was entitled to be compensated for damage to her automobile. The general rule is that the measure of damages for injury to an automobile is the difference between the market value of the automobile immediately before the accident and its market value immediately after. Blackmon v. Gilmer, supra; Plylar v. Jones, 207 Ala. 372, 92 So. 445. The difference between the value of an automobile before and after an injury may be shown by proof of a reasonable cost of restoring it to its original condition. Webb v. O'-Kelly, 213 Ala. 214, 104 So. 505; Cocke v. Edwards, supra. The jury could not have found that the cost of repairs exceeded $333.36. The difference in market value of the automobile before and after the injury

was given by two witnesses, plaintiff and her husband. According to plaintiff, the value of the automobile before injury was from $800 to $1,000 and after injury was reduced to $500 or $450. According to plaintiff's husband, the value of the automobile before the injury was fixed at from $900 to $1,000 and after injury at not over $300. It appears, therefore, that under the evidence the jury could have found that the difference between the value of the automobile before and after injury was $350, using the testimony of plaintiff to the effect that the automobile was worth $800 before the injury and $450 after the injury.

The plaintiff was entitled to recover for doctor's and dentist's fees and hospital bills. Under the evidence, the most the jury could have awarded plaintiff for such services was the sum of $608.

█ So under the evidence we think the jury would have been justified in finding that plaintiff's "out of pocket" expenses, that is, for damage to her automobile and for doctor's and hospital bills, did not exceed the sum of $958.

Although plaintiff in her complaint sought to recover for loss of wages and loss of ability to earn, there was no evidence to support these claims.

The plaintiff also sought to recover damages for injuries to her person and for pain and mental suffering. The collision occurred on January 10, 1949. Immediately thereafter plaintiff felt considerable pain in her neck and back. She was immediately examined by a physician, but was unable to obtain a room in a hospital until January 12th. She remained in the hospital until February 5th. After a few weeks she returned to her work, but made frequent trips to the doctor for heat treatments.

X-rays taken on about January 10th revealed that a small piece of bone had been pulled away from the sixth cervical vertebra. Plaintiff was required to wear a steel and leather brace for several weeks. After that brace was removed she was required to wear a felt and leather brace. By April 30, 1949, when she was in effect discharged by her physician, she had improved considerably, although she suffered pain in her neck. In November of 1949 another X-ray was taken, which showed that the bone which had been pulled away had rejoined the vertebra. However, plaintiff could not move her neck from side to side and backward and forward as freely as before the accident. The attending physician testified that while he could not state positively that the restriction as to the movement of plaintiff's head and neck would disappear, he expected plaintiff to recover complete freedom of movement of her neck. Medical evidence is also to the effect that there was no reason not to believe plaintiff's claim that she still suffered pain in her neck. According to plaintiff's testimony, she had never been nervous or excitable prior to the collision, but thereafter for a period of several weeks she was highly excitable and nervous. The evidence further showed that as a result of the collision one of plaintiff's front teeth was cracked and a crown had to be placed thereon.

The injury to the tooth was, of course, permanent. It does not appear, however, that it resulted in any material disfigurement. It is evident that under the evidence the jury could have found that the injury to plaintiff's neck was not permanent.

█ There is no yardstick by which compensatory damages for pain and mental suffering can be measured and the assessment of the amount plaintiff is due as recompense for these elements of damage must be left to the sound discretion of the jury, subject only to correction by the court for clear abuse or passionate exercise. Birmingham Electric Co. v. Howard, 250 Ala. 421, 34 So.2d 830; Luquire Funeral Homes Ins. Co. v. Turner, 235 Ala. 305, 78 So. 536.

As before pointed out, the verdict of the jury was in the sum of $1,875. The evidence tends to show that the jury could have found the plaintiff was entitled to recover the sum of $958 for "out of pocket" expenses. So the question remains as to whether or not the sum of $917 was ade-

quate to compensate plaintiff for injury to her person and for pain and mental suffering.

The rules governing the review of rulings of the trial court on motions for new trial upon the ground of excessive or inadequate damages in various forms of tort actions have been often considered and applied in this court. These rules are fully and clearly set forth in the case of Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447, and need no detailed treatment here.

■ Suffice it to say that where the presiding judge refuses to grant a new trial on such a ground, the presumption attending the verdict of the jury is thereby strengthened and on a review of the question here we will not overturn the verdict of the jury or reverse the ruling of the trial court refusing the new trial unless it clearly appears that the verdict was the result of inadvertence or intentional or capricious disregard of the evidence or was infected with bias, passion, or other improper motive and that the excessiveness or inadequacy of the verdict was the result thereof. Birmingham Electric Co. v. Howard, supra, and cases cited.

■ We do not find in the verdict rendered in this case any such abuse or passionate exercise or other improper motive on the part of the jury. On a careful study of all the evidence, we cannot say the trial court erred in refusing to grant the plaintiff a new trial on the ground of the inadequacy of the verdict.

■ The next question is also included in the motion for a new trial, and is based on the contention that the verdict was a quotient verdict. Plaintiff, the movant, made out a prima facie showing in that respect by introducing a sheet of paper found in the jury room immediately after the jury retired, upon which it appears that twelve figures were added and the sum divided by twelve. The quotient was $1,875, the exact amount of the verdict. Fortson v. Hester, 252 Ala. 143, 39 So.2d 649; McBride v. Baggett Transportation Co., 250

Ala. 488, 35 So.2d 101; International Agriculture Corp. v. Abercrombie, 184 Ala. 244, 63 So. 549, 49 L.R.A.,N.S., 415.

But the prima facie effect of such evidence may be overcome by proof, which is permissible to be made by the jurors themselves, that the verdict was not arrived at by that process, and that it was used without previous agreement that the result would be taken as the amount of the verdict, but that it was tentative only, and to afford a basis for subsequent consideration by the jury. Fortson v. Hester, supra, and cases there cited; McBride v. Baggett Transp. Co., supra, and cases cited.

■ We think it clear that the trial court was correct in holding that there was no quotient verdict, inasmuch as the proof submitted by defendant sufficiently shows there was no previous agreement that the verdict should be thus arrived at, but that the procedure was for the purpose of discussion and that afterward all agreed that the figure correctly represented plaintiff's damages.

■ The objection to the statements in the affidavits of the jurors to the effect that the jury was taking an experimental ballot and that the result was to be a mere indication to each juror of what the composite group of jurors thought the verdict should be, and that there was an understanding before the figures were written down that the average figure to be so obtained would in no wise be binding on any juror nor upon the jurors as a group, on the grounds that they were statements of a mental conclusion, were propertly overruled. Mobile & O. R. Co. v. Watson, 221 Ala. 585, 130 So. 199.

Counsel for plaintiff sought to testify that the foreman of the jury or one of the other jurors who made such an affidavit told him shortly after the jury returned its verdict that the jury had tried hard to reach a verdict the day before and were unable to do so, and in order to avoid a mistrial the jurors agreed they would "take a general average" and let that be their verdict. This testimony was offered not to impeach the

verdict, but for the limited purpose of impeaching the makers of the affidavits.

 The trial court correctly sustained the objection of defendants. The makers of the affidavits could not be impeached in this manner. Although the testimony of a witness is in the form of an affidavit or deposition, the rule requires a predicate to be laid for the introduction of impeaching testimony, directing the attention of the witness to the time, place, person, and supposed contradiction. Adams v. State, 253 Ala. 387, 45 So.2d 43; Simon v. Wyler, 222 Ala. 91, 130 So. 778; Baird Lumber Co. v. Devlin, 124 Ala. 245, 27 So. 425; Hughes v. Wilkinson, 35 Ala. 453.

The judgment is affirmed.

Affirmed.

LIVINGSTON, C. J., and FOSTER and STAKELY, JJ., concur.